**Arnold ALFORD, Plaintiff-Appellant,**

v.

**FRONTIER ENTERPRISES, INC., d/b/a Frontier Petroleum Company and Arthur D. Katzenberg, Jr., Defendants-Appellees.**

No. 78–1563.

United States Court of Appeals, First Circuit.

Argued May 8, 1979.

Decided June 7, 1979.

Richard J. Grahn, Boston, Mass., with whom William F. Looney, Jr., Mary Lee Jacobs, and Moulton & Looney, Boston, Mass., were on brief, for appellant.

John P. Birmingham, Jr., Boston, Mass., with whom Bennett C. Jaffee, and Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, MURRAY, Senior District Judge.[*]

* Of the District of Massachusetts, sitting by designation.

BOWNES, Circuit Judge.

Plaintiff Alford brought suit against Frontier alleging violations of the Emergency Petroleum Allocation Act (EPAA) of 1973, 15 U.S.C. §§ 751 et seq., tortious interference with contractual relationships, and anticompetitive business practices constituting an unreasonable restraint of trade. The complaint was later amended to add a fourth cause of action derived from the same operative facts and premised on a violation of Mass.Gen.Laws Ann. ch. 93A, § 11 (unfair and deceptive trade practices). Defendants moved to dismiss on the grounds that plaintiff lacked standing, had failed to exhaust administrative remedies, and had failed to state a claim upon which relief could be granted. The district court granted a hearing on defendant's motion, following which the action was dismissed. This appeal followed.

Plaintiff alleged that defendants, in violation of the EPAA and pertinent regulations, and in order to force plaintiff and a corporation of which plaintiff was principal stockholder, Prime Gasoline and Oil Company, Inc. (Prime), out of business, terminated gasoline supplies.

The EPAA became effective on November 27, 1973. Sometime prior to that time, defendant had supplied gasoline to Prime on a wholesale basis. Shortly before November 27, 1973, defendant ceased deliveries, allegedly because Prime was in debt to Frontier. Alford was owner of seven service stations which he leased to Prime, the corporate distributor of the gasoline which held the licenses to the seven stations. After Frontier stopped deliveries, Prime went into bankruptcy. A trustee in bankruptcy was appointed to liquidate Prime, paying all bills and collecting all monies due Prime.[1] The trustee has not joined in this action.

Frontier never had a business relationship with plaintiff. Its dealings were solely with Prime, the corporation.

█ We cannot help but observe at the outset that Alford is attempting to use the corporate form both as shield and sword at his will. On the one hand, the corporate form (i. e., Prime) effectively shielded Alford from liability; on the other hand, he now asserts that he operated the seven service stations through his vehicle, Prime. It is his position that, as the principal stockholder of Prime and lessor of the service stations it operated, he can disregard the corporate entity and recover damages for himself.[2] Of course, this is impermissible. Ames v. American Telephone & Telegraph, 166 F. 820, 822 (1st Cir. 1909); Converse v. Hood, 149 Mass. 471, 21 N.E. 878 (1889); Caccavaro v. Kinkade & Co., Inc., 344 N.E.2d 421 (Mass.1976); Mass.Gen.Laws Ann. ch. 156B, §§ 9(b), 46.

[W]here the business or property allegedly interfered with by the forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts . . . .

Mendenhall v. Fleming Co., Inc., 504 F.2d 879, 881 (5th Cir. 1974), citing Martens v. Barrett, 245 F.2d 844, 846 (5th Cir. 1957).

Plaintiff relies on Perkins v. Standard Oil Co. of Cal., 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), to rescue him from imposition of this longstanding and universally accepted rule. In Perkins, plaintiff had leased property to his closely held corporate distributors which then engaged in wholesale and retail distribution of gasoline.

1. Defendant informed us at oral argument that it has not received the full amount due and owing from Prime. Due to the bankrupt status of Prime—which has no remaining assets—it is not expected that this debt will be repaid.

2. Plaintiff inappropriately cites Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d

184 (1970), for the proposition that he has standing. Data Processing identified those persons within the "zone of interests to be protected," id. at 152–3, 90 S.Ct. at 830, by the statute in question. It does not abrogate normal rules of corporate law determining who the real party in interest is. The injury, vel non, was sustained by Prime, not by plaintiff.

Perkins owned the retail outlets which he leased to his corporate distributors and brought suit against defendant oil company, claiming a violation of the Robinson-Patman Act, 15 U.S.C. § 13 (Section 2 of the Clayton Act). Though these facts present a superficial similarity to plaintiff's situation here, the crucial distinction—not recited by plaintiff—is that in *Perkins* the defendant oil company sold its gasoline directly to Perkins and billed Perkins. *See Standard Oil Co. of Cal. v. Perkins*, 396 F.2d 809, 811 (9th Cir. 1968), for discussion of uncontroverted facts of the case. Perkins' rights were personal, not derivative. No such disregard of the corporate entity obtained in the case before us. The district court correctly found Alford to lack standing to prosecute this claim on the grounds that the harm, if any, was sustained by the corporation Prime, and not by Alford.

■ Nor can plaintiff be understood to be a "non-branded independent marketer" of petroleum products under 15 U.S.C. § 752(2),[3] entitled to the mandatory allocation of 15 U.S.C. § 753(c)(1).[4] As indicated in our discussion above, the district court properly found that Alford was not a nonbranded independent marketer. The corporation Prime was the purchaser, 10 C.F.R. § 210.62(a), and the marketer, 15 U.S.C. § 752(2).

Because we find that the district court rightly dismissed the claims due to lack of standing, we need not reach the other issues raised on appeal. Suffice it to say that none appears to offer plaintiff a wedge by which he can push open the door closed to him by virtue of his lack of standing to sue.

*Affirmed.*

3. 15 U.S.C. § 752(2) defines "non-branded independent marketer" as follows:
   (2) The term "nonbranded independent marketer" means a person who is engaged in the marketing or distributing of refined petroleum products, but who (A) is not a refiner, (B) is not a person who controls, is controlled by, is under common control with, or is affiliated with a refiner (other than by means of a supply contract), and (C) is not a branded independent marketer.

4. That section reads, in pertinent part:
   (c)(1) To the extent practicable and consistent with the objectives of subsections (b)

and (d) of this section, the mandatory allocation program established under the regulation under subsection (a) of this section shall be so structured as to result in the allocation, during each period during which the regulation applies, of each refined petroleum product to each branded independent marketer, each nonbranded independent marketer, each small refiner and each independent refiner, and of crude oil to each small refiner and each independent refiner, in an amount not less than the amount sold or otherwise supplied to such marketer or refiner during the corresponding period of 1972[.]