**Michael MYERS, et al., Plaintiffs,**

v.

**Arnold Benus SILVA, et al., Defendants.**

**Civil No. 98–2176 (JAG).**

United States District Court, D. Puerto Rico.

June 7, 2002.

Zuleika Llovet-Zurinaga, San Juan, PR, Jairo A. Mellado-Villarreal, Hato Rey, PR, for Plaintiffs.

A. J. Bennazar-Zequeira, A.J. Bennazar Law Offices, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

On March 14, 2001, plaintiffs Michael Myers, Suzanne Uhl–Myers, and Heidi Uhl–Myers, represented by her parents Michael and Suzanne Myers,[2] (collectively "the Myers"), moved for partial summary judgment on their breach of contract claim (Docket No. 53). On March 29, 2001, defendants Arnold Benus Silva ("Benus"), Concho Corp. ("Concho"), and Restaurant Ballena, Inc. ("Ballena"), filed an opposition and cross-motion for summary judgment (Docket No. 55). On June 19, 2001, all motions were referred to Magistrate–Judge Justo Arenas for a report and recommendation (Docket No. 66). On December 4, 2001, the Magistrate–Judge recommended that the Court grant in part the Myers' motion on the issue of defendants' liability, but deny it in part on the Myers' request for attorney's fees, costs, and expenses, and on their request that certain statements in support of defendants' motion be stricken from the record (Docket No. 74).[3] He further recom-

---

1. Alejandro J. Cepeda–Díaz, a second year student at the University of Puerto Rico School of Law, assisted in the research and preparation of this opinion.

2. Heidi Uhl–Myers moved for voluntary dismissal of her claims pursuant to Rule 41 of the Federal Rules of Civil Procedure. This Court granted the motion and dismissed her complaint with prejudice on May 28, 2002.

Defendants "opposed" the motion after the Court had dismissed her action and asked that the dismissal be with prejudice (Docket # 92). Defendant's request has been obviously mooted by the Court's dismissal with prejudice.

3. The Myers did not object to the Magistrate–Judge's recommendation that their request that these statements be stricken from the

mended that the Court deny in part defendants' cross-motion for lack of jurisdiction and grant it in part on the issue of Benus's personal liability (*Id.*)[4]. On December 18, 2001, defendants filed objections to the report and recommendation (Docket No. 75). Upon carefully reviewing the objections, the Court adopts the report and recommendation.

## FACTUAL BACKGROUND[5]

The Myers owned and operated a country inn and restaurant in Waterford, Maine. During the summer of 1995, Benus and his family visited and dined in the Myers' restaurant. As president of Ballena, Benus invited the Myers to visit the Copamarina Beach Resort ("Copamarina") and its restaurants in Puerto Rico. In November 1995, the Myers made the trip and met with Benus, who suggested that the Myers become involved in Ballena's operations. In January 1996, the Myers returned to Puerto Rico and began negotiations for the takeover of Ballena's operations. During the negotiations, Benus revealed to the Myers plans for an expansion of Copamarina's facilities. The Myers allege that they relied upon Benus's statements when deciding to move to Puerto Rico. On February 1, 1996, the Puerto Rico Planning Board approved and authorized Copamarina's expansion plan.

On March 8, 1996, the Myers formed Joint Ventures, Inc. ("JVI"), a Puerto Rico corporation, by filing a Certificate of Incorporation with the Puerto Rico Department of State. JVI was a for-profit corporation created by the Myers for the purpose of completing negotiations for the takeover of Ballena. On March 19, 1996, Ballena, represented by its president Benus, Concho, represented by its secretary Vicente Ortiz, and JVI, represented by Mr. Myers, signed a contract entitled "Agreement for the Management of a Corporation" (the "Agreement"). Pursuant to the Agreement, the parties consented and agreed to contract JVI for the administration, management, and operation of Ballena. The Agreement also provided that the contract would be effective for an initial period of three years-from May 1, 1996 to April 30, 1999. The contract would be renewed automatically for an additional term of three years unless the parties agreed not to renew it for reasons convenient to them.

Another clause of the Agreement established a minimum management fee and an additional management incentive fee. The minimum management fee consisted of a guaranteed amount of $150,000 per year, payable in twelve monthly installments on the last day of each month. The additional management fee, to be paid to JVI at the end of every contract year, represented fifty percent of Ballena's net income during that year. Payments of the minimum management fee began in April 1996.

Additionally, pursuant to clause 8(a) of the Agreement, the parties agreed that in the event of a default, the injured party could terminate the contract after providing the defaulting party thirty days' written notice to cure the breach. According to clause 14, written notices were to be

---

record be **denied**. The Court, will therefore, adopt this recommendation as unopposed and will not discuss it in this opinion.

**4.** The Magistrate–Judge determined that Benus is not liable in his personal capacity for breach of contract. Accordingly, this Court will treat the claims against Benus in his personal capacity as dismissed inasmuch as the Myers did not timely object the Magistrate–Judge's Report and Recommendation on this issue. Except where otherwise noted, all future references to "defendants" will designate "Concho and Ballena" only.

**5.** The pertinent facts are taken from the Magistrate–Judge's Report and Recommendation.

sent by first class mail, certified with return receipt requested, and were to be received ten days before the start of the thirty-day period to comply with the Agreement.

Throughout the Myers' management of Ballena, Ballena and JVI officials met several times to discuss Ballena's concerns with how the restaurant was being run. Defendants met with the Myers to discuss client dissatisfaction with the service and food being provided by JVI, problems with employee recruitment, training, and supervision, and complaints about the menu changes introduced by Mrs. Myers. Defendants allege that these meetings and the paperwork they provided plaintiffs regarding these matters effectively gave the Myers notice of their noncompliance with the terms of the Agreement.

On October 21, 1996, during early morning hours, Salvador Suau, Copamarina's manager, met with Mrs. Myers and notified her that, per Benus's orders, she and Mr. Myers were to gather their personal belongings and leave Copamarina's premises effective immediately. As soon as Mr. Myers arrived, he was informed that he had to vacate the premises. The Myers complied with Benus's request.

On October 24, 1996, the Myers directed a letter to Mr. Ortiz Colón of Concho and Ballena demanding, pursuant to clause eight of the Agreement, that they be notified in writing of any default by JVI of the terms and conditions of the Agreement. Ortiz sent a letter on Ballena's behalf confirming in writing its decision to cancel the Agreement with immediate effect. The letter did not identify JVI's default. Rather, the letter referred the Myers to a conversation that morning between the parties' attorneys for that information. Plaintiffs thereafter filed the present suit.

## DISCUSSION

### A. *Summary Judgment Standard*

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the Court, the opposing party has the burden of demonstrating that a trial worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for the factual controversy to prevent summary judgment the contested fact must be "material" and the dispute over it must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit

under the governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.,* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). When carrying out that task, the court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

B. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation.*

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B) (1993); Fed.R.Civ.P. 72(b); Local Rule 503. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate's report and recommendation

by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's report and recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R.1998).

C. *Defendants' objections to the Magistrate–Judge's Report and Recommendation.*

1. *The recommendation of liability against Ballena.*

■ Ballena [6] contends that it was justified in terminating the Agreement because of JVI's prior breach of its obligations. Ballena further argues that it had the right to terminate the Agreement under Art. 1077 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3052. Article 1077 provides that "[t]he right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him." 31 P.R. Laws Ann. § 3052.

The Puerto Rico Civil Code allows for the resolution [7] of mutual obligations by one of the parties when the other party defaults on an essential term or condition of the contract. We agree that in principle and had the parties not agreed otherwise, Art. 1077 could have given Ballena the right to resolve the contract in case of

**6.** The Magistrate–Judge concluded that both Ballena and Concho are liable for breach of contract. This part of the opinion will refer exclusively to Ballena inasmuch as Concho's liability will be separately discussed below.

**7.** Although the official translation of Art. 1077 utilizes the term "rescission", the original Spanish text utilizes the term "resolution". Because the Spanish version prevails, 31 P.R. Laws Ann. § 13, we will use the term "resolution". *See also Dopp v. HTP Corp.,* 755 F.Supp. 491, 497 n. 8 (D.P.R.1991).

default by the Myers. In the Agreement, however, the parties stipulated to limit their ability to resolve the contract on the crucial issue of default as a cause for termination. By so doing, the parties departed from Art. 1077 and established through mutual consent their own terms and conditions for resolution of the Agreement which called for proper notice and a thirty day period to cure the default. Consequently, defendants are now precluded from invoking Article 1077 to resolve the contract when they voluntarily and mutually stipulated with the Myers a procedure for "resolution" different from that found in Article 1077.

It is well established that "[i]n our jurisdiction, there is contractual liberty. The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." *Hennes v. Sun Life Assur. Co. of Canada*, 291 F.Supp. 670, 673 (D.P.R.1968). *See also* 31 P.R. Laws Ann. § 3372. "Obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations. The will of the parties as evidenced by their contract, if valid, is the law of the case in an action on the Contract." *Hennes*, 291 F.Supp. at 673 (citations omitted). *See also* 31 P.R. Laws Ann. § 2994; *Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.*, 583 F.2d 565, 568 (1st Cir.1978); *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir.1995); *Garcia v. World Wide Entmt. Co.*, 132 D.P.R. 378, 384 (1992); *Constructora Bauzá v. García López*, 129 D.P.R. 579, 593 (1991); *Hidalgo Marrero v. Depart. de Servicios Sociales*, 129 D.P.R. 605, 620 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345, 351 (1984); *Olazábal v. U.S. Fidelity Etc.*, 103 D.P.R. 448, 462 (1975); *Matricardi v. Peñagaricano, Admor.*, 94 D.P.R. 1, 4 (1967).

■ The contractual liberty recognized by the Courts indicates that the parties are free to negotiate the terms under which a contract may be terminated. In this case, all parties agreed that, in order to terminate the Agreement, the parties in default had to be given written notice, sent by first class mail, certified with return receipt requested, after which, they had thirty days to cure the default. Given that this requirement is not contrary to law, morals, or public order, it is the law in this case. *See Hennes*, 291 F.Supp. at 673.

Relying on *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F.Supp. 548 (D.C.Conn.1967), Ballena alleges that in terminating the Agreement, it complied with the spirit—if not the letter—of the Agreement. Ballena argues that the meetings held between it and JVI, and the paperwork provided in them, should have given JVI notice of its default. Prior decisions of this Court, however, do not support its contention. "Such construction may [ ] be inconsistent with the guidelines on hermeneutics provided by the Civil Code which requires that '[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof.'" *Santiago v. Becton Dickinson & Co., S.A.*, 571 F.Supp. 904, 913 (D.P.R. 1983) (*citing* 31 P.R. Laws Ann. § 14). *See also Ferreteria Matos, Inc. v. P.R. Tel. Co.*, 10 P.R. Offic. Trans. 194, 198 (1980); *Rodriguez v. Fidelity Bond Mort. Corp.*, 8 P.R. Offic. Trans. 161, 162 (1978). Therefore, having established that the Agreement is the law of the case, and because its terms are clear and unambiguous, the letter of the contract must be followed, not merely its spirit.

If Ballena felt that JVI had defaulted in its obligations and wished to terminate the Agreement, then it should have given JVI written notice and thirty days in which to

cure its breach, as it freely stipulated. The Court concludes that terms of the contract had to be strictly complied inasmuch as Ballena's right to terminate the Agreement arises from the contract itself. Defendants, therefore, breached the contract when they did not comply with clauses 8(a) and 14 of the Agreement before terminating it. *See 31 P.R. Laws Ann. § 3018; Hoffman v. Cuadrado,* 14 P.R.R. 573, 578 (1908). *Cf. Castillo v. Smart Products, Inc.,* 289 F.Supp. 138, 140 (D.P.R.1968) (Termination of contract without prior written notice does not constitute breach of contract when contract contained no provision on that point.)

The Court need not discuss Ballena's allegations of JVI's default inasmuch as we find that in breaching the contract Ballena deprived JVI of its contractual right to cure any defaults after the notice the parties had mutually stipulated.

### 2. *The denial of the dismissal of plaintiffs' claim.*

Defendants argue that the Magistrate–Judge's recommendation to deny summary judgment dismissing plaintiffs' claim on the grounds that the phrase "conduct business in a professional manner" is not defined in the Agreement rests on an unreasonable inference. As discussed above, "[t]he validity and fulfillment of the contracts cannot be left to the will of one of the contracting parties." 31 P.R. Laws Ann. § 3373. Whatever the phrase should mean, Ballena rendered inapplicable its implementation when it failed to give JVI the stipulated notice of default as well as the opportunity to cure such default within a thirty-day period.

### 3. *The lack of liability of Concho.*

Concho alleges that it cannot be held liable for breach of contract according to Art. 1042 of the Puerto Rico Civil Code. Article 1042 states that "[o]bligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." 31 P.R. Laws Ann. § 2992. Concho argues that since the Agreement does not assign to it any specific obligation, and, because it was Ballena who terminated the Agreement, it cannot be held liable for breach of the contract. Concho further argues that under the Civil Code, the lack of any express provision that an obligation is "solidary" precludes the joint and several ("solidary") liability of the parties for the same obligation. *See* 31 P.R. Laws Ann. § 3101.

The Court agrees that any obligation under the Agreement would not be a joint and several ("solidary") obligation between Concho and Ballena. Article 1091, however, provides that,

> If from the context of the obligations referred to in section 3101 of this title any other thing does not appear the credit or the debt shall be presumed as divided in as many equal parts as there are creditors or debtors, being considered as credits or debts, each one different from the other.

31 P.R. Laws Ann. § 3102. Hence, a determination that there is no joint and several ("solidary") obligation does not necessarily release Concho from liability.

Concho's arguments do not persuade us to rule in its favor. Even if the Agreement does not assign it any specific obligation, Concho is a party to the contract and, as such, can be held liable for its breach. Therefore, we see no reason to depart from the Magistrate–Judge's recommendation that Concho is liable for breach of contract.

### 4. *The lack of diversity jurisdiction.*

Defendants insist on the claim that the Court lacks jurisdiction because supposedly such jurisdiction was fabricated by the Myers' assignment of JVI's alleged

cause of action to themselves improperly and collusively in contravention of 28 U.S.C. § 1359. The Court has twice denied this claim. (*See* Docket Nos. 18 and 25). Since it has been raised once more as an objection to the report and recommendation, the Court will rule on it *de novo*.

Section 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Defendants argue that this case is between Puerto Rico corporations, and therefore, diversity jurisdiction is absent. To concoct diversity, they contend, JVI's alleged cause of action was assigned to its stockholders, the Myers. In support of their argument, defendants rely on cases stating that transfers of legal title between parent and subsidiary companies are presumptively ineffective, a presumption that has been extended to corporate directors and shareholders. *See, e.g. Airlines Reporting Corp. v. S and N Travel, Inc.,* 58 F.3d 857, 862 (2d Cir.1995). We do not believe, however, that the presumption applies when the transfer is made upon a corporation's dissolution.

This case, as well as the others cited by defendants, are distinguishable, however, because they involved corporations which, while still in existence, transferred their causes of actions to an out-of-state corporation to establish diversity. Here, however, the transfer was made upon JVI's dissolution. Since JVI was created for the purpose of taking over the operations of Ballena, once the Agreement was terminated JVI's shareholders decided it no longer served a purpose. Accordingly, they filed a certificate of dissolution with the Puerto Rico Department of State. JVI was dissolved in accordance with Puerto Rican law as evidenced by the Secretary of State's certification. (*See* Docket

No. 55, Exhibit 9). We are not convinced that JVI was dissolved with the sole purpose of concocting diversity jurisdiction as defendants allege.

Puerto Rico's General Corporation Law, 14 P.R. Laws Ann. § 2000, *et seq.,* provides that upon dissolution of the corporation, "[i]f there shall be any balance remaining after the payment of the debts and necessary expenses, [the trustees or receivers] shall distribute and pay the same to and among those who shall be justly entitled thereto, as having been stockholders of the corporation, or their legal representatives." 14 P.R. Laws Ann. § 2008. The Court finds that JVI's cause of action was properly assigned to the Myers under the General Corporation Law of Puerto Rico. At the time this complaint was filed, JVI had already ceased to exist. Diversity has thus been established inasmuch as JVI's successors are not domiciled in Puerto Rico. Defendants' arguments fail to convince the Court that the transfer was collusively made to invoke jurisdiction. The Court, therefore, reaffirms its jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(1).

5. *Defendants' contention that the Report and Recommendation is incomplete.*

Defendants argue that the report and recommendation is incomplete because the Magistrate–Judge did not consider their motion to dismiss under Fed.R.Civ.P. 37(b)(2)(C) for failure to comply with a court order. (*See* Docket No. 64). The Magistrate–Judge had issued an order compelling the Myers to produce the following documents:

a  Financial statements for each plaintiff and for JVI for the last seven years.

b  Plaintiffs' tax returns for the past seven years.

c Operational reports, reservations, occupancy rates, package specials, sittings at restaurants, banquets and private receptions, employees, signed auditor's reports, expenses reports and other related statistics available for any food and lodging establishment of which the plaintiffs' had managerial or supervisory responsibilities for the last seven years.

d All documents related to the divorce of Michael and Suzanne Myers.

e Psychotherapy and counseling records of Heidi Uhl–Myers.

f Records of Heidi Uhl–Myers at Caribbean High School in Ponce.

g Documents related to diving lessons on training received by plaintiffs during 1996.

(Docket No. 49).

The requested documents would be relevant to the determination of damages still pending before the Court and not for the disposition of this summary judgment motion. To correct the omission, the Court will deny defendants' motion to dismiss (Docket No. 64) and order the Myers to produce the requested documents on or before June 17, 2002. Failure to comply will result in a dismissal of the action pursuant to Fed.R.Civ.P. 37(b)(2)(C).

### CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate–Judge's report and recommendation. The Myers' motion for partial summary judgment is **GRANTED** on the issue of Ballena's and Concho's liability for breach of contract and **DENIED** on the other issues. Defendants' cross-motion for summary judgment is **GRANTED** on the issue of Benus's liability and **DENIED** on the other issues.

Additionally, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 37(b)(2)(C) is DENIED. The Myers are ordered to comply with the Magistrate–Judge's order for production of documents on or before June 17, 2002.

IT IS SO ORDERED.