**Kenneth McCULLOCH,**
**et al., Plaintiffs,**

v.

**Norberto VELEZ MALAVE,**
**et al., Defendants.**

**Civil No. 01–2440(JAG).**

United States District Court,
D. Puerto Rico.

Feb. 25, 2003.

Fernando L. Gallardo, Woods and Woods, San Juan, PR, Kenneth J. McCul-loch, Ballard, Rosenberg, Golper & Savitt, LLP, New York, NY, for plaintiffs.

Robert Millan, Rio Piedras, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

On October 23, 2001, plaintiffs Kenneth McCulloch ("McCulloch"), his wife Carmen Otero Ferreras, and their conjugal partnership (collectively "plaintiffs") brought this action for collection of money and breach of contract under Puerto Rico law against defendants Norberto Velez Malave, his wife Nitza Denise Leon, their conjugal partnership, and Caribbean Bakers, Inc. (collectively "defendants"). The plaintiffs invoke the Court's jurisdiction because of the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332. Because the Court finds there is no diversity, it **dismisses** the case without prejudice for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND[2]

McCulloch, a citizen of the State of New York, is the president and sole shareholder of Mandorico, Inc. ("Mandorico") and Tip Top Donuts, Inc. ("TTD"). Mandorico and TTD are incorporated under the laws of Puerto Rico. Defendants are all citizens of Puerto Rico. On June 20, 1996, Mandorico entered into a lease agreement with the Puerto Rico Industrial Development Corporation ("PRIDCO") for the premises where Mandorico's business is located. On May 7, 1997, McCulloch, acting as president of Mandorico, entered into a Business Purchase Agreement ("BPA") with defendants, whereby they purchased from

1. Alejandro J. Cepeda–Diaz, a third year student at the University of Puerto Rico School of Law assisted in the research and preparation of this opinion.

2. The Court culls the relevant facts from the complaint (Docket No. 1).

Mandorico a business dedicated to the manufacture and sale of baked goods, pastries, and donuts, among other things.

The BPA established a four year payment schedule. The BPA further established specific dates when plaintiffs would transfer title of the business' various assets to defendants over the same four year period, subject to defendants being current on their payments. Moreover, defendants agreed to assume the ongoing costs of running the business, including the rent payments to PRIDCO. According to the BPA, Mandorico transferred the PRIDCO lease to TTD. TTD was supposed to transfer the lease to defendants at an unspecified later time.[3] The transfer to defendants never took place, however.

Furthermore, the BPA states that, in the event of default by defendants, plaintiffs and Mandorico would have the right to resume the business upon giving defendants notice of default and fifteen days in which to cure it. On May 29, 2001, plaintiffs sent a notice of default to defendants for the sum of $43,750. This suit soon followed.

## PENDING MOTIONS

On March 1, 2002, plaintiffs moved for summary judgment (Docket No. 21), and on May 31, 2002, defendants opposed (Docket No. 32). On July 11, 2002, the Court referred the motions to Magistrate–Judge Gustavo A. Gelpi for a report and recommendation (Docket No. 44). On July 18, 2002, Magistrate–Judge Gelpi recommended that the Court deny summary judgment without prejudice because discovery had not yet been completed (Docket No. 46). On July 26, 2002, plaintiffs filed objections to the report and recom-

mendation (Docket No. 50). Review of the objections is pending before the Court.

On August 13, 2002, Magistrate–Judge Gelpi held a hearing where defendants contested the Court's subject matter jurisdiction. Following the hearing, Magistrate–Judge Gelpi ordered defendants to brief the Court on the matter (Docket No. 53). On September 3, 2002, defendants moved to dismiss the complaint, pursuant to Fed.R.Civ.P 12(b)(1) and 19(b), for lack of subject matter jurisdiction (Docket No. 57). Plaintiffs did not oppose. On September 6, 2002, Magistrate–Judge Gelpi recommended that the Court deny the motion, finding that Mandorico was not an indispensable party and that plaintiffs' complaint satisfied the amount in controversy requirement (Docket No. 58). On September 16, 2002, defendants filed objections to the report and recommendation. Review of the objections is also pending before the Court.

On December 19, 2002, plaintiffs moved for a preliminary injunction, requesting that the Court enjoin defendants from continuing to occupy the business' premises and from removing any equipment from the premises (Docket No. 78). On December 27, 2002, the Court referred the motion to Magistrate–Judge Gelpi. On December 31, 2002, Magistrate–Judge Gelpi ordered defendants to respond by January 15, 2003 (Docket No. 81). Defendants, however, failed to oppose the motion. The motion is pending before the Court.

On January 17, 2003, while a decision on their first motion for summary judgment was still pending, plaintiffs filed a second motion for summary judgment (Docket No. 86). Defendants did not oppose. This motion is also pending before the Court.

---

**3.** Although the BPA states that PRIDCO agreed to the transfer of the lease to TTD, Mandorico alleges that it remains responsible for the lease.

For the reasons discussed below, the Court **grants** defendants' motion to dismiss for lack of subject matter jurisdiction (Docket No. 57). Accordingly, the Court **denies** plaintiffs' motions for summary judgment (Docket Nos. 21 & 86) and for a preliminary injunction (Docket No. 78).

## DISCUSSION

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R.Civ.P. 72(b); Local Rule 503. Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate–Judge's report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's report and recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R.1998).

B. *Defendants' Motion to Dismiss*

▮▮▮▮ As courts of limited jurisdiction, federal courts have the duty of construing jurisdiction-granting statutes strictly. *See, e.g., Alicea–Rivera v. SIMED*, 12 F.Supp.2d 243, 245 (D.P.R.1998). Here, plaintiffs have invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *See Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir.1994). Defendants have challenged the plaintiffs' jurisdictional allegations; accordingly, plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction.[4] *Bank One v. Montle*, 964 F.2d 48, 50 (1st Cir.1992); *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982).

Defendants challenge the Court's jurisdiction (1) because the real party in interest is Mandorico, a Puerto Rico corporation, and, thus, no diversity exists; and (2) because plaintiffs have failed to make a good faith claim in excess of the jurisdictional amount.

Magistrate–Judge Gelpi rejected defendants' first claim relying on *George v. HEK America, Inc.*, 157 F.R.D. 489 (D.Co. 1994). In *George*, the Court recognized that plaintiff's corporation was not an indispensable party because it had dissolved and plaintiff, as the sole shareholder, was its successor in interest. *See id.* at 493. Furthermore, the plaintiff in *George* had entered into some of the contracts in dispute on his own behalf, as well as on the corporation's. *Id.* This Court reached a similar conclusion in *Myers v. Silva*, 208 F.Supp.2d 155 (D.P.R.2002). In *Myers*, the Court found that it had jurisdiction over the case because the corporation had dissolved and transferred its cause of action to plaintiff prior to the filing of the complaint. *Id.* at 161–62. Moreover, the plaintiff in *Myers* proffered as evidence a

---

**4.** The Court finds that Magistrate–Judge Gelpi erred in ordering defendants to brief the Court on the issue of jurisdiction and then proceeding to rule on the motion before plaintiffs could answer. The burden to prove that jurisdiction exists is for plaintiffs to bear, not defendants.

certificate of dissolution issued by the Puerto Rico Secretary of State, as well as the minutes from the corporation's resolution transferring the cause of action to plaintiff as its successor in interest. These circumstances are not present here.

Unlike in *George* and *Myers,* the record in this case does not show that Mandorico has dissolved. Indeed, plaintiffs have not even alleged that it has. That Mandorico still exists and is a party in interest is further evidenced by the fact that it is named as a plaintiff in the summary judgment motions (Docket Nos. 21 & 86). For this reason, the Court disagrees with Magistrate–Judge Gelpi. In order to properly decide the issue of whether Mandorico is an indispensable party to this action, the Court must first examine the validity of Mandorico's assignment of its cause of action to McCulloch.

Pursuant to 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

> This section mandates careful examination of transfers or assignments which might have the effect of creating federal jurisdiction. The reason for such an examination is clear: ... such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction.... Suits between local citizens not raising federal issues were to be confined to state courts....

*Airlines Reporting Corp. v. S and N Travel, Inc.,* 857 F.Supp. 1043, 1047 (E.D.N.Y. 1994) (*citing Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 474 (2d Cir.1976)). "[T]he mere legality of an assignment cannot make it valid for purposes of federal jurisdiction because such a ruling 'would render § 1359 largely incapable of accomplishing its purpose.'" *Toste*

*Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 643 (1st Cir.1995) (*quoting Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 829, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969)). " '[T]he ease with which a party may "manufacture" federal jurisdiction' could lead to "a vast quantity of ordinary contract and tort litigation ... channeled into the federal courts" which is "the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors." ' " *Id.* (*quoting Kramer,* 394 U.S. at 828, 89 S.Ct. 1487). *See also Greater Dev. Co. v. Amelung,* 471 F.2d 338 (1st Cir.1973) (per curiam).

The Courts have held that transfers between affiliated corporations "are presumptively ineffective to create diversity jurisdiction." *Dweck v. Japan CBM Corp.,* 877 F.2d 790, 792 (9th Cir.1989); *Simpson v. Alaska State Comm'n for Human Rights,* 608 F.2d 1171, 1174 (9th Cir.1979); *Airlines Reporting Corp. v. S and N Travel,* 58 F.3d 857, 862 (2d Cir.1995); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 991–93 (9th Cir.1994); *Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 475 (2d Cir. 1976); *Toste Farm,* 70 F.3d at 643–644 (1st Cir.1995). This presumption has been extended to assignments between corporations and their officers and directors. *See Dweck,* 877 F.2d at 792; *Blythe Indus., Inc. v. Puerto Rico Aqueduct & Sewer Auth.,* 573 F.Supp. 563, 564 (D.P.R.1983); *Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1079 (5th Cir.1972).

■ Thus, in order to prevail, plaintiffs must show that the assignment to McCulloch was valid and not an attempt to create jurisdiction where none existed. They have failed to do so. Upon review of the record, the Court has not found even a scintilla of evidence to support the validity of the assignment to McCulloch. The ease with which McCulloch, as Mandorico's sole

shareholder, could assign the cause of action to himself, further drives the Court to the conclusion that the assignment served no purpose other than to allow him to sue in federal court. *See Toste Farm,* 70 F.3d at 643. This is exactly the type of action § 1359 is meant to prohibit. *See Kramer,* 394 U.S. at 828, 89 S.Ct. 1487. Therefore, without evidence to the contrary, the Court must find that the assignment to McCulloch is invalid.

Because the joinder of Mandorico would destroy diversity and, thus, this Court's jurisdiction, the Court must now determine whether Mandorico is an indispensable party to this case. It is well-settled that a corporation is a separate and independent entity from its shareholders, even when it has only one shareholder. Hence, the Court must treat Mandorico, TTD, and McCulloch as three separate and independent persons in making this determination. *See e.g., In re Plantation Realty Trust,* 232 B.R. 279, 282 (Bankr.D.Mass.1999); *Green v. Victor Talking Mach. Co.,* 24 F.2d 378, 380 (2nd Cir.1928) ("Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons.")

Rule 19(b) provides that, if Mandorico cannot be joined without destroying diversity, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." Fed.R.Civ.P. 19(b). In making this determination, the Court must consider

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

The BPA names McCulloch, Mandorico, and TTD as the "sellers." [5] As signatories to the BPA, they would all have to appear as plaintiffs in order for the Court to provide proper relief, *see Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982), unless McCulloch is seeking redress for injuries he personally suffered as a result of the alleged breach. *See Ferrer v. Carricarte,* 751 F.Supp. 1032, 1034 (D.P.R.1990).

> The general rule in this jurisdiction, as in others, is that a stockholder of a corporation has no personal or individual right of action against a third person for damages that result indirectly to the stockholder because of an injury to the corporation. *See e.g., In re Dein Host, Inc.,* 835 F.2d 402, 405–06 (1st Cir.1987); *Alford v. Frontier Enter., Inc.,* 599 F.2d 483, 484 (1st Cir.1979); *Kush v. American States Ins. Co.,* 853 F.2d 1380, 1383 (7th Cir.1988). A shareholder is entitled to sue only where there is a direct injury to the share-holder in his or her individual capacity, independent of any duty owed the corporation. *Continental Illinois Natl. Bank & Trust Co. v. Stanley,* 585 F.Supp. 1385, 1388 (N.D.Ill.1984).

*Id.* Thus, in order to survive dismissal, McCulloch must establish that the damages he seeks to recover are those he personally suffered and not Mandorico's or TTD's. He has failed to do so.

---

5. Defendants, however, have not claimed that TTD is also an indispensable party.

Plaintiffs seek to recover (1) $50,000 for back rent owed to PRIDCO; (2) $50,000 for the value of equipment which defendants were required to return to plaintiffs in the event of default, but that plaintiffs claim was stolen from the premises; (3) $43,705 for contractual payments owed by defendants; and (4) $100,000 in damages.

■ First, as to the amount owed for back rent to PRIDCO, the Court finds that McCulloch is not entitled to collect. PRIDCO and Mandorico are the only signatories to the lease.[6] Thus, only PRIDCO is entitled to bring suit to collect the back rent. Mandorico, as the party directly responsible for the lease payments, could file suit to force defendants to comply with the agreement and pay the owed amount, not McCulloch.

Second, as to the amount of $50,000 for the equipment, the Court finds that McCulloch is not entitled to collect. Although plaintiffs claim in the complaint that the equipment is worth in excess of $50,000, they reduced this amount in their first motion for summary judgment, where they sought only $10,000. This discrepancy creates doubt as to the real value of the equipment and whether plaintiffs overstated the amount in order to satisfy the amount in controversy requirement. The amount notwithstanding, the Court is not in a position to determine which of the three sellers the assets belonged to or who is entitled to collect for their loss. Hence, a judgment from this Court could prejudice the interests of Mandorico and TTD in their absence.

Third, it is unclear from the BPA which of the sellers is entitled to collect the contractual payments owed. The BPA states that the defendants were to make their payments to McCulloch. It does not

specify, however, whether he would receive these payments in his personal capacity or on behalf of Mandorico or TTD. The Court is, thus, not in a position to determine whether McCulloch is entitled to collect this amount.

Lastly, plaintiffs state that they suffered $100,000 in damages. They have failed, however, to identify the amount of damages suffered by each of the signatories to the BPA. Without a clear showing of the damages suffered by each of the parties in interest, the Court is not in a position to determine what part of the damages sought, if any, McCulloch is personally entitled to.

Therefore, the Court finds that Mandorico and TTD are indispensable parties to this action. Inasmuch as their joinder would destroy diversity jurisdiction, the Court must dismiss the case.

## CONCLUSION

For the foregoing reasons, the Court **rejects** the Magistrate–Judge's report and recommendation, **grants** defendants motion to dismiss for lack of subject matter jurisdiction (Docket No. 57), and **dismisses** the case without prejudice. Accordingly, the Court **denies** plaintiffs' motions for summary judgment (Docket Nos. 21 & 86) and for a preliminary injunction (Docket No. 78). Judgment will enter accordingly.

IT IS SO ORDERED.

---

**6.** Although, Mandorico claims that it transferred the lease to TTD with PRIDCO's approval, there is no evidence on the record to support it.