Fabricant, Judith, J.
INTRODUCTION
This action arises from alleged negligence of an accounting firm in providing tax services. The plaintiffs, Rohtstein Corporation (“Rohtstein”) and Steven Rohtstein (“Steven”), allege that they suffered damages as a result of faulty advice provided by the defendants, accounting firm KPMG, LLP, and its employees, Robert Noonan, Daniel Newton, and Marian Melnick. Before the Court is the defendants’ motion for partial summary judgment with respect to damages. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The materials before the Court, considered in the light most favorable to the plaintiffs, provide the following factual background. Rohtstein is a wholesale food distributor operating in New England and certain mid-Atlantic states. Steven is its president and sole shareholder. From at least 1999 until 2002, Rohtstein engaged KPMG to provide tax, audit, and consulting services.[3] The parties set forth the terms of their relationship each year in a written engagement letter signed by a partner of KPMG and by Rohtstein’s controller. Appended to the letters for 2001 and 2000 was a document captioned “KPMG LLP/Standard Terms and Conditions/Tax Engagements.” That document contains thirteen numbered paragraphs, each with an underlined title in bold type. Paragraph 9, titled “Limitation of Liability and Indemnity,” begins with this sentence: “KPMG’s maximum liability to Client arising for any reason relating to services rendered under this engagement shall be limited to the fees paid for those services." The letter for 1999 included the same language in the body of the letter.
In September of 2002, Rohtstein transferred its accounting business to another firm and apparently requested that KPMG give the new firm access to its files. In response, KPMG sent Rohtstein a letter, dated September 25, 2002, setting forth the terms on which it would comply with that request. The letter stated: “Regarding our cooperation and other participation in this matter, KPMG will have no liability of any kind to any person in excess of any fees paid to KPMG hereunder, and shall have no liability for any consequential special, incidental, or exemplary damages.” Rohtstein’s controller assented to the terms set forth by signing the letter.
Rohtstein’s new accounting firm advised it that it should have been filing state tax returns in several jurisdictions where it had not done so. After filing tax returns in those jurisdictions, the complaint alleges, Rohtstein incurred costs, interest, and penalty charges, and was unable to recover credits in Massachusetts and New Jersey that it could have recovered if it had made timely filings in those other states. The plaintiffs brought this action on August 9, 2004, asserting claims on behalf of both plaintiffs against all defendants, of accounting malpractice, breach of contract, breach of fiduciary duty, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, “forfeiture of money had and received,” and “unjust enrichment and restitution.”[4]
The defendants’ motion seeks to establish that, pursuant to the limitation of liability clauses in each engagement letter as well as in the September 25, 2002, letter, the amount the plaintiffs can recover in this action is limited to the amount of the fees paid to KPMG for its services for each year in which its services may be found to give rise to liability. The plaintiffs respond that the limitation of liability clause is ambiguous , that it should not be enforced because it violates public policy and is unconscionable, and further that Steven, who did not sign any of the engagement letters, is not bound by them personally.
*334 DISCUSSION
The limitation of liability clauses in the engagement letters between Rohtstein and KPMG for 1999 through 2001 limit KPMG’s liability “for any reason relating to services rendered under” each engagement letter to the amount of fees paid under that letter. The language on its face is clear and unequivocal.[5] The question presented by the parties’ arguments is whether it is enforceable.[6]
Contractual limitation of liability clauses are enforceable under Massachusetts law.[7] See Sharon v. City of Newton, 437 Mass. 99, 105 (2002); Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 374 (1990) (“the consensual allocation of risk is not contrary to public policy”); Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 493 (1987); see also Arthur D. Little Int'l Inc. v. Dooyang Corp., 928 F.Sup. 1189, 1201-02 (D.Mass. 1996) (applying Massachusetts law to enforce clause in business consulting contract limiting liability to fees paid). A single exception exists: Disciplinary Rule 6-102, promulgated by the Supreme Judicial Court in the exercise of its power to regulate the practice of law, provides that “A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.” The plaintiffs argue that accountants should be subject to a similar prohibition, since they also practice a profession of substantial public importance. See Volin v. Board of Public Accountancy, 422 Mass. 175, 183 (1996). As the plaintiffs acknowledge, however, no case has applied such a restriction to accountants, nor have plaintiffs identified any statute, regulation, or other authority that does so.[8] Regulation of the accounting profession, unlike regulation of lawyers, is under the control of the executive branch, not the judiciary. A determination that limitation of liability clauses in accounting contracts violates public policy would have to come from the Legislature or the Board of Public Accountancy, not from this Court.
The plaintiffs also argue that the liability limitation clause is unconscionable because the “restricted damage allowance is grossly disproportionate to the loss to the [p]laintiffs” and “has the practical effect of avoiding almost all responsibility for KPMG’s negligence.” A contract is unconscionable only if it is “such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.” Waters v. MIN Ltd., 412 Mass. 64, 66 & 69 (1992), quoting Hume v. United States, 132 U.S. 406, 411 (1889). The facts presented here do not meet that standard. Nothing in the record indicates that Rohtstein is anything other than a sophisticated commercial entity, capable of negotiating agreements to protect its own interests. Nor is there any suggestion that it was under any kind of duress when it signed three successive annual engagement letters, each containing the limitation language in prominent form. No evidence suggests any fraud, misrepresentation, or concealment.[9]
Steven Rohtstein seeks to avoid enforcement of the limitation of liability clauses against him personally on the ground that he was not a party to the engagement letters. This argument ignores the fact that the engagement letters, and the services provided by KPMG to Rohtstein Corporation under them, form the basis for his claim. Nothing in the complaint, or in anything else before the Court, identifies anything other than the contracts between Rohtstein and KPMG that would give rise to a duty on the part of KPMG toward Steven. His argument is thus an effort to use his relationship to the corporation, and its contracts with KPMG, as both a sword and a shield, aligning himself with the corporation to obtain the benefits of the contracts, but separating himself from it to avoid the damage limitation provision of the contracts. He is not entitled to do so. See Alford v. Frontier Enters, Inc., 599 F.2d 483, 484 (1st Cir. 1979) (a shareholder “may not use the corporate form as both a shield and sword at his will”); see, e.g., XR Co. v. Block & Baldestri, 44 F.Sup. 2d 1296, 1300-01 (S.D. Fla. 1999) (shareholder prevented from avoiding terms of a contract to which his corporation was a parly, even though he did not enter the agreement individually). If he has any cause of action at all, it is subj ect to the terms of the contract, including the limitation of liabilily clauses.
CONCLUSION AND ORDER
For the foregoing reasons, the defendants’ Motion for Partial Summary Judgment is ALLOWED. Pursuant to the contracts between the parties, damages to be awarded at trial shall be limited in accord with the limitation of liability provisions of each engagement letter.

The plaintiffs’ response to the defendants’ statement pursuant to Superior Court Rule 9(A)(b)(5) asserts that the relationship dates back to 1986, but cites only the unverified complaint in support of that assertion. The dispute, if any exists, is not material to the issues raised by this motion. Certain additional factual assertions appear in the plaintiffs’ submission under Rule 9A(b)(5) for which the plaintiffs cite only the unverified complaint, failing to identify any eviden-tiary material before the Court. The Court need not consider these assertions, which have not been presented in the manner required by the Rule. The Court notes, however, that the facts asserted, taken as true, would not change its analysis.

The complaint does not distinguish between the two plaintiffs, and does not identify the theory on which Steven Rohtstein seeks personal recovery. At argument, counsel indicated that the Corporation is formed under sub-chapter S of the Internal Revenue Code, so that its income is taxed to Steven directly. The theory thus appears to be that he suffered harm personally as a result of KPMG’s inadequate tax advice to the corporation.

In the Court’s view, the language cited by the defendants in the September 25, 2002, letter, limits KPMG’s liability not for professional services, but for its “cooperation and other *335 participation in this matter” — that Is, Its allowing Rohtsteln’s new accounting firm access to its files. The complaint does not make any claim based on that conduct.

The plaintiffs argue that the engagement letters are ambiguous, in that they “are silent as to how a calculation should be made when, as the case here, the ‘services rendered’ for which the underlying claims arise date back to 1986.” The Court sees no ambiguity. Each letter limits liability for services performed under that letter to the fees paid for those services. The circumstances showing negligence may include knowledge defendants acquired of the plaintiffs’ business over the entire term of the relationship, but the negligence had to consist of acts or omissions in providing advice and tax preparation services for particular tax years, pursuant to one or more engagement letter. The limitation clauses establish the limit of liability for such negligence in connection with services for each particular tax year, based on fees paid for those services for that year.

The parties point out that two of the engagement letters designate New York law as governing, but neither side suggests any relevant difference between New York and Massachusetts law.

Another judge of this Court has declined to extend the rule of DR 6-102 to an accounting firm, ruling that such firms, “like other commercial entibes, are free to negotiate limitabon of liability provisions with their clients.” Palmer v. Ernst & Young, Civil No. 050290 (Suffolk Super. April 11, 2007) [22 Mass. L. Rptr. 277],

Judge Gants, in Palmer, supra, Civil No. 050290, applied a proportionality test of the sort the plaintiffs propose to uphold a clause that limited an accounting firm’s liability to one million British pounds, against a damages claim of nine million dollars. The record presented here does not provide amounts, either of the damages claimed or of the fees paid to KPMG. At argument, counsel estimated the damages at $250,000, and the fees at approximately $15,000 per year. The difference is substanbal, but not such that the clause effectively eliminates all liability, as the plaintiffs contend.