**T. O. BRADBURY and N. B. Burt,**
**Appellants,**

v.

**Frank DENNIS, Appellee.**

**No. 6978.**

United States Court of Appeals
Tenth Circuit.

Oct. 15, 1962.

Fred M. Winner, Denver, Colo. (Emory L. O'Connell and Robert J. Enochs, Denver Colo., were with him on brief), for appellants.

Clyde J. Watts, Oklahoma City, Okl. (Yegge, Hall & Schulenberg, Denver, Colo., was with him on brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

MURRAH, Chief Judge.

This interlocutory appeal under Section 1292(b) Title 28 U.S.C., squarely presents the question of the trial court's diversity jurisdiction. It is contended that the assignment of the asserted cause of action by a wholly owned resident corporation to its nonresident stockholder-plaintiff was "improperly or collusively" made to invoke federal court jurisdiction within the meaning of Section 1359, 28 U.S.C., which denies diversity jurisdiction in such cases.[1] The trial court sustained its diversity jurisdiction, but certified the

---

1. § 1359. "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

question here as one as to which "there is substantial grounds for difference of opinion."

The complaint affirmatively asserts diversity of citizenship and requisite amount in controversy, and alleges in substance that by the challenged assignment of the asserted cause of action, the plaintiff-appellee merely acquired that which he already owned since he alone had provided the funds for payment of the usurious interest, which is the subject matter of this lawsuit.

■ If, as suggested, the appellee was the actual owner of the cause of action before the purported assignment, he was of course the real party in interest, and we have no occasion to consider the propriety of the assignment. Pursuant to a hearing to determine jurisdiction, the trial court found, and the record indicates, that the plaintiff and others entered into a partnership for the development of certain real estate in Colorado, the appellee advancing all of the partnership capital. The partnership entered into a contract with the appellants which provided for the payments now claimed to include usurious interest. The partnership organized a Colorado corporation and assigned all of the partnership assets to it, and the corporation assumed all of the partnership liabilities, including an indebtedness to the appellee for capital advancements to the partnership. Some of the payments made under the alleged usurious contract were made by the partnership and some by the corporation. After the appellee became the sole stockholder of the corporation, he caused it to execute the assignment in question, purporting to assign to him all claims and demands which the corporation had or might have against the appellants. At the time of the assignment, the corporation was insolvent, but the plaintiff had paid or orally promised to pay a substantial part of the corporation's indebtedness. It is thus plain that the appellee was not the sole owner of the asserted cause of action before the challenged assignment, and was not therefore the real party in interest.

■ This brings us to the question whether the assignment was "improperly or collusively" made within the meaning of Section 1359. We start with the presumption against diversity jurisdiction, and the burden is and always has been upon the one asserting it to affirmatively sustain it; and the court is under the duty to dismiss the action if at any stage of the proceeding it becomes apparent that jurisdiction is lacking. City of Lawton, Oklahoma v. Chapman, 10 Cir., 257 F.2d 601.

Originally, one section of the Judicial Code (§ 24(1), 36 Stat. 1091) specifically denied federal jurisdiction to an assignee of a cause of action if it was not available to his assignor. Sowell v. Federal Reserve Bank of Dallas, Tex., 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041. Another section of the same Code (§ 37, 36 Stat. 1098) denied federal jurisdiction if, at any time after suit had been brought or removed to the federal court, it appeared that the parties to the suit had been "improperly or collusively made or joined * * * for the purpose of creating a case cognizable or removable * * *" to the federal court. The revisors of the 1948 Judicial Code conjoined the two sections to form Section 1359, under which diversity jurisdiction by assignment became conferrable provided it was not improperly or collusively made for that purpose. See Revisors' Note to 28 U.S.C. § 1359; and Steinberg v. Toro, D.C., 95 F.Supp. 791. Indeed, the appellants freely concede as much.

The critical words "improperly or collusively," having been imported from old Section 37 into the Revised Section 1359, we will assume that Congress intended for them to have the same meaning and connotation which had been given them at the time of incorporation into the Revised Code. Our difficult problem is one of ascertaining their true jurisdictional meaning at the time of the revision. As words used to delineate jurisdiction, they ought to be cast in black and white, but we find them in the decisional gray zone. Though words of general import, and no strangers to the law, they are nevertheless

words of art when used to define or delineate federal court jurisdiction. They are used in the disjunctive and are evidently intended to define different and varying jurisdictional boundaries. Pre-revision case law did not draw a distinction between the two, but was content to say that an assignment or transfer was not improper or collusive unless it could be said to be "fictitious or pretended," Miller & Lux, Inc. v. East Side Canal & Irrigation Co., 211 U.S. 293, 29 S.Ct. 111, 53 L.Ed. 189; or "feigned or merely colorable," Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681; or for the purpose of creating a temporary or spurious citizenship, Amalgamated Clothing Workers v. Curlee Clothing Co., 8 Cir., 19 F.2d 439; Tower Realty Co. v. City of East Detroit, Mich., 6 Cir., 185 F.2d 590. It was enough that the assignee or transferee was the real party in interest. Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., supra. If we accept the dictionary definition, as did the Third Circuit, (i.e. Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784, 75 A.L.R.2d 711) the word "improperly" broadly covers any act or conduct deemed unsuited to the circumstances of the case, while the word "collusively" is a stronger word with a more restricted meaning indicating a secret agreement for a bad purpose.

Particularly, we need to know by what standards we shall determine when an assignment or transfer is "fictitious," "colorable" or "spurious," hence improper or collusive. The trial court sustained its jurisdiction on the legal premise that the insolvency at the time of the assignment, or the failure of the corporate minutes to reflect authorization for the assignment, or that the assignment might be voidable upon collateral attack by the creditors, did not render the assignment either improper or collusive or prevent the plaintiff from maintaining the action thereunder. In short, the trial court confined its inquiry to the validity of the transfer as between the parties, that is, between the corporation and its sole stockholder, and finding adequate consideration, went no further. The appellant takes the position that the assignment is improperly or collusively made if it is subject to attack by anyone, and contends that the assignment amounted to a partial liquidation by an insolvent corporation which is prohibited by Colorado statute. See C.R.S.1953 Supp. 31–31–11. He says this position is supported by Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; and Miller & Lux, Inc. v. East Side Canal & Irrigation Co., supra.

In Lehigh Mining, stockholders of a Virginia corporation organized a Pennsylvania corporation and transferred real property located in Virginia to the Pennsylvania corporation for the purpose of conferring diversity jurisdiction upon the federal court in Virginia to entertain an asserted cause of action. The court sustained a denial of diversity jurisdiction, saying "The arrangement by which, without any valuable consideration, the stockholders of the Virginia corporation organized a Pennsylvania corporation and conveyed these lands to the new corporation for the express purpose—and no other purpose is stated or suggested—of creating a case for the Federal court, must be regarded as a mere device to give jurisdiction to a Circuit Court of the United States and as being, in law, a fraud upon that court, as well as a wrong to the defendants. Such a device cannot receive our sanction." (p. 339, 16 S.Ct. p. 312)

More than a decade later, the stockholders of a California corporation in Miller & Lux organized a Nevada corporation and transferred all of the assets of the California corporation to it. The California corporation became the owners of all of the stock of the Nevada corporation, with full power of control in the California stockholders. A suit instituted by the California corporation in the California state court was dismissed and refiled in the federal court by the Nevada corporation, based upon diversity jurisdiction. The writer of the Lehigh case, also writing for the court in Miller & Lux,

reemphasized the right and power of the resident stockholders in either case to require the foreign corporation to reconvey the property to the resident corporation at their convenience; and that in each case, the transfer of the property was a mere sham or device to invoke federal jurisdiction.

The appellees rely on the much later case of B & W Taxi, and say that while it did not expressly overrule Lehigh, it is conceptually different. In that case, the stockholders of a Kentucky corporation organized a Tennessee corporation to which it transferred all of its assets. The Kentucky corporation was dissolved. The Tennessee corporation made new contracts similar to those held by the Kentucky corporation, and in all respects succeeded to that company's business. Suit was brought on the new contracts based on diversity of citizenship. Diversity jurisdiction was sustained, the court saying, "The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction." The court thought the distinction between that case and Lehigh and Miller & Lux was too clear for discussion, and we agree. The obvious distinction lies in the fact that in Lehigh and Miller & Lux, the resident corporation remained in existence, and in full control of the foreign corporation, while in the Taxi case, the resident corporation was dissolved.

The appellees also seem to rely on Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784, 75 A.L.R.2d 711 a post-revision case involving diversity jurisdiction based upon the appointment of a foreign administrator. The foreign administrator was appointed for the avowed purpose of invoking federal jurisdiction. The court thought the facts of that case fell outside the ruling of Lehigh and within the ambit of the Taxi case. While the reasoning is not entirely clear, it is significant, we think, that under applicable state law, a foreign administrator had standing to maintain the suit, and the decree of the probate court appointing the administrator was not subject to collateral attack.

And see Mecom v. Fitzsimmons Drilling Co., 10 Cir., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904. But compare Martineau v. City of St. Paul, 8 Cir., 172 F.2d 777, where the court, looking at state law, concluded that an administrator was without standing to maintain the suit in the state court, and therefore could not maintain it in the federal court based on diversity of citizenship.

As we view the cases, none of them control in our situation. Our transaction is not merely colorable or a sham as in Lehigh and Miller & Lux. The assignment is supported by adequate consideration, and while it is infected with the self dealings of a sole stockholder with his insolvent corporation, there was nothing surreptitious or fictitious about the transaction. While it may lack the sanctions of state law which underlie the Taxi and Corabi cases, at the same time no one can say that it operates to the prejudice of any third party, including the creditors of the corporation, for whose protection state law is invoked. Indeed, if our inquiry should go so far, we may very well conclude that the assignment was for the benefit of all interested parties, except perhaps the appellants.

■■ Certainly diversity jurisdiction should not be made to depend on whether some one can pick a legal flaw in the transaction by which jurisdiction is conferred. It should not be made to depend upon or await adjudication of the legality of the transaction under state law. All this means that the state of the law is left in the gray zone where we found it. Certainly no rule of thumb is suggested or stated. But, after all, it is the words of a federal statute we construe in the context of an historical purpose to deny diversity jurisdiction when it would operate to serve a purpose which is unsuited to the good order of federal court administration. Viewed in this context, we cannot say that the assignment was either improper or collusive, or that the suit is not being prosecuted in the name of the real party in interest. The judgment is affirmed.