Ralph GILCHRIST, Administrator of the
Estate of Clara Shawnee, Deceased,
Plaintiff,

v.

C. Riley STRONG, Defendant.

Civ. No. 68–245.

United States District Court
W. D. Oklahoma.

May 7, 1969.

W. R. Davis and C. W. Schwoerke, Oklahoma City, Okl., for plaintiff.

Geo. W. Dahnke and James W. Sheperd, Oklahoma City, Okl., for defendant.

## ORDER OF DISMISSAL

DAUGHERTY, District Judge.

Defendant has moved to dismiss Plaintiff's case on the ground of lack of jurisdiction. Jurisdiction of the case is claimed by Plaintiff on his allegations of diversity of citizenship of the parties and the existence of an amount in controversy in excess of $10,000. 28 U.S.C.A. § 1332. Plaintiff, a Kansas citizen, is the Administrator of the Estate of Clara Shawnee, deceased, appointed by order of the County Court of Canadian County, Oklahoma. The deceased was a citizen of Oklahoma and the beneficiaries of her estate are citizens of Oklahoma. Defendant is a citizen of Oklahoma. Defend-

ant's Motion is based on the provisions of 28 U.S.C.A. § 1359, which are as follows:

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Defendant asserts in his Motion that Plaintiff, a Kansas citizen, was selected as the Administrator of the Estate of Clara Shawnee by the local attorney who filed the case for the sole purpose of creating diversity of citizenship and acting as the party plaintiff in this Court in violation of the above statute.

Pursuant to Defendant's challenge to the Plaintiff's assertion of jurisdiction, the Court conducted an evidentiary hearing to permit Plaintiff the opportunity of establishing the factual basis of the pleaded diversity jurisdiction. In such proceeding, Plaintiff has the burden of proof.[1] In the course of this hearing, Plaintiff's attorney admitted that one of the reasons for appointing the Kansas Administrator was to invoke federal jurisdiction.[2] It was also claimed by said attorney that fear of local punishment against one serving as such administrator and suing in that capacity and convenience to himself and witnesses prompted this attorney to seek someone from outside the state in order to avoid trial in El Reno, Oklahoma. On the other hand, it appears that Plaintiff Gilchrist has served as administrator at least five times in the past ten years in cases of this sort before this Court.[3] The estate

---

1. Bradbury v. Dennis, 310 F.2d 73 (Tenth Cir. 1962); City of Lawton, Oklahoma v. Chapman, 257 F.2d 601 (Tenth Cir. 1958).

2. The following occurred at the evidentiary hearing:

THE COURT: Well, under your evidence, what is the purpose for appointing a Kansas administrator?

MR. SCHWOERKE: The purpose was to get someone that would be willing to sue a very popular doctor in El Reno that could not be punished or reached by the Oklahoma Medical Association, if the Court wants me to be rather frank about it.

THE COURT: Couldn't you find such a person in Oklahoma City?

MR. SCHWOERKE: I doubt it, that would carry any dignity to the plaintiff in front of a jury.

THE COURT: What about one of your law partners?

MR. SCHWOERKE: I don't think any of them would care to serve and have it reported to the * * * in the Supreme Court or be known.

THE COURT: You mean there is nobody in Oklahoma City that would be willing to be an administrator?

MR. SCHWOERKE: Oh, I might find some person.

THE COURT: Well, what was your purpose in going to Kansas?

MR. SCHWOERKE: The * * * I, I say * * * that may be one * * * I am not going to be so * * * I am going to be utterly frank with the Court. One of the factors was to get somebody that I could get in federal court and * * * along with other reasons. I tried to get lawyers to help me in El Reno, and you can't get co-counsel. We have it here in Oklahoma City, where my office is located, where I can walk to the courthouse; where my experts * * * and I am going to have to bring them in on airplanes and get good connections and hotels. There's a lot of factors that enter into the judgment of it, but when you get to the sole factor, I don't think the Court in this case can say that it is the sole reason, because I have a problem of getting a plaintiff that a jury would trust to handle the money for minor children.

THE COURT: Anything else gentlemen?"

3. These cases are: Ralph Gilchrist, Administrator of the Estate of Walt Bailey, Deceased v. Beckman, Inc., et al., No. 4231 Civil (WD Okl.1959); Ralph E. Gilchrist, Administrator of the Estate of Howard Cooper, Deceased v. The City of Oklahoma City, No. 9408 Civil (WD Okl.1961); Ralph E. Gilchrist, Administrator of the Estate of David Lenox Stewart, Deceased v. Jordan Bus Co., No. 9474 Civil (WD Okl.1961); Ralph Gilchrist, Administrator of the Estate of Don A. Crossley, Deceased v. Van Zant Air Services, Inc., et al., No. 63–131 Civil (WD Okl.1963); and Ralph E. Gilchrist, Guardian and Next Friend of Robert Cowherd, Jr. v. Fletcher, et al., No. 65–106 Civil (WD Okl.1965). In all but Case No. 63–131, Plaintiff's at-

has no assets other than this cause of action.

Our Circuit has not touched on the question before the Court. Our Circuit has passed on situations where lack of diversity of citizenship is obtained or "manufactured" to defeat federal jurisdiction. Mecom v. Fitzsimmons Drilling Company, 47 F.2d 28 (Tenth Cir. 1931), reversed 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904 (1931); Bradbury v. Dennis, 310 F.2d 73 (Tenth Cir. 1962). But, no decisions are reported from our Circuit where diversity of citizenship is obtained or "manufactured" to invoke, rather than defeat, federal jurisdiction. The invoking of federal jurisdiction is the precise situation covered by 28 U.S.C.A. § 1359, supra.

In the Third Circuit, however, the question has been a source of much debate over the years, which has culminated in McSparran v. Weist, 402 F.2d 867 (Third Cir. 1968). That case overruled Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (Third Cir. 1959), which has been the modern foundation for nearly all recent cases holding that "manufactured diversity" is not prohibited by § 1359, and Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010 (Third Cir. 1950). The McSparran case held:

" * * * a nominal party designated simply for the purpose of creating diversity of citizenship, who has no real or substantial interest in the dispute or controversy, is improperly or collusively named." 402 F.2d at p. 873.

The Court gave controlling weight to three factors present in that case: (1) The controversy is essentially local, (2) There is an absence of discrimination against an out of state party, and (3) The guardian was appointed to create diversity.

In the Second Circuit, a broader approach is suggested by a well reasoned district court case, which has been affirmed on appeal. Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000 (Vt.1967), aff'd on opinion below, 393 F. 2d 934 (Second Cir. 1968).[4] Ferrara, in agreement with the admonition of Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205, 68 A.L.R.2d 805 (1957), concluded that the determination of the existence of jurisdiction is a practical and not a mechanical matter to be resolved by the pleadings and the nature of the action. The Ferrara approach is based on the historical significance of the predecessor statutes to § 1359, 28 U.S.C. (1940 Ed.) §§ 41(1) and 80. Following the guidelines of Bradbury v. Dennis, supra, Note 1, the court in Ferrara noted that the words "improperly or collusively,"

" * * * should be viewed as 'words of art', acquiring technical jurisdictional meaning through the course of judicial interpretation and application." 272 F.Supp. at p. 1007.

Because of the many and varied factors the courts have taken into account regarding "manufactured diversity," the court in Ferrara concluded:

"The best that can be attained under the present state of the law is an empirical formula which calls for judicial inquiry into all the circumstances attending the transfer whereby the plaintiff acquired his interest in the suit, and for a decision on the aggregate effect of those circumstances in the light of prior decisions and the policies underlying the statute." 272 F.Supp. at p. 1007.

In McSparran it was conceded that the sole purpose of the appointment of the out of state administrator was to invoke federal jurisdiction, whereas, in Ferrara

torney herein was counsel of record. In each case, diversity jurisdiction was founded on the citizenship of Gilchrist, who is a practicing attorney in Wichita, Kansas.

4. There is an earlier Second Circuit district court case reaching the opposite conclusion on the basis of Corabi v. Auto Racing, Inc., supra. Lang v. Elm City Construction Co., 217 F.Supp. 873 (Conn. 1963), aff'd on opinion below, 324 F.2d 235 (Second Cir. 1963).

this was only one of several factors involved in the appointment. Nevertheless, the position of the *McSparran* and *Ferrara* courts is the same, as it was said in *McSparran*:

"Whether in an individual case diversity jurisdiction is 'manufactured' is, of course, a question of fact. Here 'manufactured' diversity is conceded, but in other cases where it is not conceded it will be for the district court to make the factual determination." 402 F.2d 867 at p. 876.

 Two considerations impel the Court to favor and adopt the position taken by the courts in the *McSparran* and *Ferrara* cases. First, federal courts are courts of limited jurisdiction, and the statutes conferring such jurisdiction in derogation of the power of the state courts should be strictly construed. Second, as it is the policy of the diversity statute to provide the out of state litigant with a forum free from local prejudices, the effectuation of that policy should be a paramount consideration in any decision supporting federal jurisdiction.

The cause of action in the instant case arose in El Reno, Oklahoma, and is, in all respects, a local controversy, without the slightest federal "flavor." The deceased, the beneficiaries of her estate and the Defendant have not been shown to have any connection with any state other than Oklahoma. There is no possible discrimination against an out of state party. It is an appropriate case for the state courts and, but for the device used by Plaintiff's attorney in this case, would have been filed in the state courts. Any prejudice of the citizens of El Reno may furnish grounds for a change of venue pursuant to state statute.[5] Finally, the Court finds and concludes from the evidence presented and all the circumstances of this case, that the diversity jurisdiction obtained herein by the appointment of the Kansas Administrator

was "manufactured" for the purpose of invoking federal jurisdiction in violation of 28 U.S.C.A. § 1359. The Court is convinced that the sole and only purpose of appointing the Kansas Administrator in this case was to invoke federal jurisdiction. But, if anyone wishes to argue with this conclusion because of the other reasons advanced by counsel, certainly the primary or dominant purpose of the appointment of the Kansas Administrator under the totality of the circumstances present was to invoke federal jurisdiction. This latter factual determination conforms to the test stated in *McSparran* and *Ferrara*, supra.

Thus, this case being local in nature, with no possible discrimination against an out of state party and the Kansas Administrator being appointed for the purpose of "manufacturing" federal jurisdiction, this Court lacks jurisdiction to entertain the controversy and the same must be dismissed.

---

5. 12 Okl.St.Ann. § 140 provides: "In all cases in which it is made to appear to the court that a fair and impartial trial cannot be had in the county where the suit is pending, the court may, on application of either party, change the place of trial to some county where such objections do not exist."