# United States Court of Appeals
## For the First Circuit

No. 03-1562

KENNETH MCCULLOCH ET AL.,

Plaintiffs, Appellants,

v.

NORBERTO VÉLEZ, A/K/A NORBERTO VÉLEZ MALAVÉ, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Selya, and Lipez,
Circuit Judges.

Kenneth McCulloch, with whom Ballard, Rosenberg, Golper & Savitt, Fernando L. Gallardo, and Woods & Woods LLP, were on brief, for appellants.
Robert Millan for appellees.

April 5, 2004

**SELYA**, __Circuit Judge__.  This litigation has its genesis in a purchase and sale agreement (the P&S) executed on May 7, 1997. Under it, the sellers — plaintiff-appellant Kenneth McCulloch and two corporations wholly owned by him (Mandorico, Inc. and Tip Top Donuts, Inc.) — agreed to purvey, inter alia, a baked goods manufacturing business located in Puerto Rico and certain equipment associated therewith to Norberto Vélez Malavé, his wife, their conjugal partnership, and Caribbean Bakers, Inc. (collectively, the purchasers or the defendants).  The sellers also agreed to assign, and the purchasers agreed to assume, an existing lease for the business premises between the Puerto Rico Industrial Development Corporation (as lessor) and Tip Top Donuts (as lessee).[1]

The P&S required the purchasers to make installment payments and granted the sellers the right to retrieve the business and the equipment if the purchasers committed an event of default and failed to remedy it within a specified cure period.  McCulloch alleges that an uncured default occurred in or around May of 2001. In all events, he took an assignment from Mandorico of its rights under the P&S and, together with his wife and their conjugal partnership, filed suit in the United States District Court for the District of Puerto Rico.  Federal jurisdiction was premised on

---

[1]The P&S assumes that Tip Top Donuts is (or will be) the lessee.  There is some reason to believe, however, that Mandorico is the actual lessee.  This identity question is not germane to the issues that we must decide, and, accordingly, we do not probe the point.

diversity of citizenship (the McCullochs are citizens of New York and the defendants are citizens of Puerto Rico) and the existence of a controversy in the requisite amount. 28 U.S.C. § 1332(a)(1). The complaint charged that the defendants had defaulted on the P&S and owed $43,750 in unpaid installments, at least $50,000 as the value of equipment entrusted to them, and at least $50,000 in back rent.

In due course, the plaintiffs moved for summary judgment. The defendants opposed the motion. They also moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 19(b). That motion questioned the district court's subject matter jurisdiction on two grounds, namely, (i) whether the plaintiffs had made a good-faith claim for an amount sufficient to give the court jurisdiction, and (ii) whether true diversity existed in view of the defendants' assertion that Mandorico (a corporation organized under the laws of Puerto Rico) was an indispensable party and/or the real party in interest on the plaintiffs' side of the case.

On September 6, 2002, a magistrate judge recommended that the motion to dismiss be denied. He opined that the amount-in-controversy requirement had been satisfied and that Mandorico was not an indispensable party. The defendants objected to the magistrate judge's report and recommendation. While that objection was pending, the plaintiffs moved to enjoin the defendants from continuing to occupy the business premises and from removing any

equipment. They also filed a second motion for summary judgment (which apparently superseded their earlier summary judgment motion).

The district court reviewed the magistrate judge's report and recommendation de novo, Fed. R. Civ. P. 72(b), and granted the defendants' motion to dismiss for lack of subject matter jurisdiction. McCulloch v. Vélez Malavé, 260 F. Supp. 2d 358, 361-64 (D.P.R. 2003). The court did not, however, place its principal reliance on the arguments advanced by the defendants, but, rather, focused on Mandorico's assignment of rights to McCulloch and concluded that the assignment was an improper attempt to "create [federal] jurisdiction where none existed." Id. at 362. Consequently, the assignment had to be disregarded for jurisdictional purposes. Id. at 363 (citing 28 U.S.C. § 1359). Only then did the court revert to the original grounds raised in the motion to dismiss; it concluded that, stripped of the assignment, Mandorico would become an indispensable party (whose joinder would destroy diversity) and/or the plaintiffs could not establish damages in a sum sufficient to satisfy the amount-in-controversy requirement. Id. at 363-64. Accordingly, the court dismissed the case for lack of subject matter jurisdiction. Id. at 364. Consistent with that ruling, the court denied as moot the pending motions for injunctive relief and for summary judgment. Id.

This appeal ensued after the district court rejected a timely motion for reconsideration. Fed. R. Civ. P. 59(e). The plaintiffs advance no fewer than five separate assignments of error. They claim that the lower court erred by (i) precluding McCulloch from serving as co-counsel; (ii) dismissing the complaint for lack of subject matter jurisdiction; (iii) denying the motion for reconsideration; (iv) denying the motion for a preliminary injunction; and (v) denying the motion for summary judgment. We start with a preliminary point and then address the first two claims of error. For reasons that will become apparent, we stop there.

We begin by sorting out wheat from chaff. When several plaintiffs with separate and distinct demands join together in a single suit premised on diversity jurisdiction, each plaintiff must independently satisfy the amount-in-controversy requirement. See Zahn v. Int'l Paper Co., 414 U.S. 291, 294 (1973); Clark v. Paul Gray, Inc., 306 U.S. 583, 589 (1939). Here, McCulloch, his wife, and their conjugal partnership appear as plaintiffs and appellants. They have gone to great lengths in attempting to establish that McCulloch has a claim in the requisite amount. There is nothing in the record, however, to show that any plaintiff other than McCulloch fulfills the amount-in-controversy requirement: neither McCulloch's wife nor their conjugal partnership is a party to the P&S or to the assignment from Mandorico. Nor is there any evidence

-5-

that these two plaintiffs have some sort of common or undivided interest in the amounts claimed by McCulloch. Accordingly, we are bound to dismiss the appeal as to both McCulloch's wife and the conjugal partnership. See Zahn, 414 U.S. at 295; see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (warning that claims advanced without developed argumentation are deemed abandoned). The appeal proceeds only to McCulloch's behoof.

We need not linger long over McCulloch's asserted right to represent himself. McCulloch is both a lawyer and a member of the bar of the United States District Court for the District of Puerto Rico. Thus, he ordinarily would have a right, in that capacity, to enter his appearance as counsel in a pending case. But this case is out of the ordinary in that McCulloch is a principal in the transaction that underlies the litigation. He has been deposed at length, and there is every reason to expect that he would be one of the main witnesses should a trial ensue. A lawyer is under an ethical obligation to refrain from appearing as counsel in a case in which he reasonably can anticipate that he will be called as a percipient witness. See ABA Model Rules of Prof'l Conduct R. 3.7(a); see also D.P.R.R. 83.5(a) (formerly Rule 211.4(b)) (incorporating the ABA Model Rules to govern attorney conduct in the District of Puerto Rico). Given the salience of that apothegm, the district court did not abuse its discretion in refusing to permit McCulloch to act as co-counsel in this matter.

-6-

See <u>Hutchinson</u> v. <u>Spanierman</u>, 190 F.3d 815, 828 (7th Cir. 1999); <u>see</u> <u>also</u> <u>United States</u> v. <u>Merlino</u>, 349 F.3d 144, 150-52 (3d Cir. 2003).

Nor did McCulloch have a right to appear as co-counsel in his personal capacity (i.e., pro se).  He is — and has been — represented by other counsel in the district court proceedings.  A party has a right to represent himself or to be represented by an attorney, but he cannot have it both ways.  There is no right to hybrid representation in the federal courts.  <u>United States</u> v. <u>Campbell</u>, 61 F.3d 976, 981 (1st Cir. 1995); <u>United States</u> v. <u>Nivica</u>, 887 F.2d 1100, 1121-22 (1st Cir. 1989).

To be sure, hybrid representation occasionally may be permitted in the trial court's discretion.  <u>Nivica</u>, 887 F.2d at 1121.  Such largesse is, however, to be dispensed sparingly.  <u>Id.</u> There is nothing in the record that suggests that this case should come within the exception to this general rule.  Thus, the district court did not abuse its discretion in denying McCulloch's plaint for what amounts to hybrid representation.

We turn next to the district court's jurisdictional ruling.  The key component of the court's analysis was its determination that Mandorico's assignment of rights to McCulloch did not pass muster under 28 U.S.C. § 1359.  That statute is an anti-collusion measure, enacted to prevent parties from manufacturing diversity jurisdiction in order to channel garden-

variety litigation from the local courts into a federal forum.  See Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 828-29 (1969).  In terms, the statute strips the district court of jurisdiction over any "civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C. § 1359.

The district court's decision to delve into the bona fides of the assignment cannot be faulted.  It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction.  In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988); Fed. R. Civ. P. 12(h)(3). This obligation, coupled with the easily discernible congressional intent behind the enactment of section 1359, impels a federal court, when confronted with suspicious circumstances, to make every effort to determine whether a party has been insinuated into an action in order to allow the litigants artificially to invoke the court's jurisdiction.  U.S.I. Props. Corp. v. M.D. Constr. Co., 860 F.2d 1, 5 (1st Cir. 1988).  The same considerations create a parallel duty on the part of the court to take steps to determine whether any party has been omitted from pending litigation in order to permit the unwarranted invocation of federal jurisdiction.  Id.

That the district court had the right — indeed, the duty — to inquire into the legitimacy of the assignment does not necessarily validate the way in which it implemented that

-8-

responsibility. McCulloch's best argument against the district court's action is that the possibility of a collusive assignment was not broached until the court itself raised the question sua sponte in the dismissal order,[2] so that he was denied a fair opportunity to be heard. Under this thesis, the court should have warned him that it had doubts about the propriety of the assignment and given him a chance to defend the bona fides of the assignment before determining that the assignment should be disregarded.[3] We explain briefly why we believe that this argument has merit.

Transfers or assignments that have the effect of creating federal jurisdiction raise a red flag and, thus, need to be examined with care. Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 474 (2d Cir. 1976). Assignments between related parties (e.g., an assignment between a parent company and a subsidiary or an assignment between a corporation and one of its officers or directors) are subject to even more exacting scrutiny. Toste Farm Corp. v. Hadbury, Inc., 70 F.3d 640, 643-44 (1st Cir. 1995). Because such assignments are highly suspect, they are

---

[2]Even though the defendants were challenging subject matter jurisdiction, their attack focused on the amount in controversy and the plaintiffs' purported failure to join an indispensable party. Because they never questioned the propriety of the assignment, that issue was neither prefigured in the magistrate judge's report nor addressed in the briefing below.

[3]McCulloch adds that he had a legitimate business reason for the assignment. Because the asserted reason rests on matters dehors the record, we do not consider it at this juncture.

presumptively ineffective to create diversity jurisdiction. Airlines Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857, 862-63 (2d Cir. 1995); Yokeno v. Mafnas, 973 F.2d 803, 809-10 (9th Cir. 1992). An assignment between a corporation and its sole shareholder is an assignment between related parties (and, therefore, triggers this presumption).

The assignment between Mandorico and McCulloch is of this ilk. Two things follow from that fact. First, the district court had the duty to inquire into its propriety. Second, the court had a right to regard the assignment as presumptively ineffective under section 1359.

That is not the end of the matter, however, but only the beginning. Although this presumption is strong medicine, it is rebuttable. In order to overcome it, the party who asserts the validity of the assignment for jurisdictional purposes has the burden of proving that it was not made collusively. Dweck v. Japan CBM Corp., 877 F.2d 790, 792 (9th Cir. 1989); Prudential Oil, 546 F.2d at 476. Carrying this burden requires a credible showing of a legitimate reason for the transfer, that is, a reason unrelated to the fabrication of federal court jurisdiction. Dweck, 877 F.2d at 792-93.

In the best of circumstances, rebutting the presumption that attaches to an assignment between related parties is likely to be difficult. Here, however, the district court made that task

-10-

virtually impossible:  it analyzed the assignment and passed upon its efficacy without giving McCulloch an opportunity to offer any evidence as to why the assignment had been executed.  In omitting this intermediate step, the court erred.

The defendants argue that this was not error, but merely an alternative way of proceeding.  In this regard, they emphasize that a nisi prius court has ample discretion to decide factual challenges under Rule 12(b)(1) without conducting an evidentiary hearing.  That is certainly true.  See, e.g., Valentin v. Hosp. Bella Vista, 254 F.3d 358, 364 (1st Cir. 2001).  But the exercise of that factfinding authority is subject to certain conditions.  Before a court can engage in differential factfinding and dismiss an action under Rule 12(b)(1), the party asserting the existence of subject matter jurisdiction must be given notice that the issue is in dispute and an adequate opportunity to ascertain and present relevant facts and arguments supporting his claim of jurisdiction. See Frey v. EPA, 270 F.3d 1129, 1132 (7th Cir. 2001); Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243-44 (11th Cir. 1991); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Local 336, Am. Fed'n of Musicians v. Bonatz, 475 F.2d 433, 437-38 (3d Cir. 1973); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350, at 217 (2d ed. 1990) (noting that "the court should not dismiss the complaint on a Rule 12(b)(1) motion without giving the nonmoving party the

-11-

opportunity to be heard" unless it finds an irremediable defect on the face of the complaint); Berrios v. Dep't of Army, 884 F.2d 28, 33 (1st Cir. 1989) (similar).  In other words, the party seeking to remain in federal court must receive a fair chance to put his best foot forward.

In this instance, the district court acted prematurely in deciding to disregard the assignment from Mandorico to McCulloch without asking the parties for either relevant evidence or legal argument.  Although the assignment was presumptively ineffective, see text supra and cases cited, the court neither afforded McCulloch advance notice that it intended to evaluate the assignment's enforceability nor gave him a meaningful opportunity to rebut the presumption of invalidity.  Principles of basic fairness demand that McCulloch be afforded a chance to present his side of the story.

We leave the particulars as to how McCulloch should be afforded a meaningful opportunity to offer facts anent the purpose for assignment to the lower court.  The court may, in its discretion, convene an evidentiary hearing to determine the jurisdictional issues, Fed. R. Civ. P. 12(d), or it may elect to gather the pertinent facts in some other manner.  We take no view of the propriety of the assignment, and none should be implied from our comments.

We need go no further. In the present posture of the case, it would not be prudent for us to reach any of the other issues raised by the parties (including, but not limited to, whether McCulloch, without the assignment, can satisfy the amount-in-controversy requirement; whether Mandorico is — or is not — an indispensable party to this action; or whether the district court erred in denying McCulloch's other motions). Further factfinding is needed, and the shape and texture of those issues will vary depending on both the facts found and the fate of the assignment. It therefore suffices, for the nonce, to vacate the order of dismissal as to McCulloch and remand the case to the district court for additional proceedings consistent with this opinion. We think it fitting that all parties bear their own costs incurred in connection with this appeal.

**So Ordered**.