Kenneth McCULLOCH,

et al.[1], Plaintiff(s)

v.

Norberto MALAVE–VELEZ,
et al., Defendant(s).

Civil No. 01–2440 (JAG).

United States District Court,
D. Puerto Rico.

July 29, 2005.

Fernando L. Gallardo, Woods and Woods, Kenneth J. McCulloch, San Juan, PR, for Plaintiffs.

Robert Millan, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On April 5, 2004, the Court of Appeals for the First Circuit vacated and remanded our decision to dismiss the present complaint for want of jurisdiction.[2] The Court of Appeals ruled that this Court should have afforded plaintiff Kenneth McCulloch ("Mr.McCulloch") an opportunity to state

---

1. Pursuant to the First Circuit's Opinion, the Court dismisses the claims of plaintiffs Carmen Otero–Ferreras and the Conjugal Partnership McCulloch–Otero for failure to meet jurisdictional amount. The judgment entered in this case will so reflect.

2. See *McCulloch v. Velez*, 364 F.3d 1 (1st Cir.2004).

his position as to the propriety of the assignment of rights issue before *sua sponte* deciding on it. After affording the parties an opportunity [3] to develop the record, the Court is now in the position to revisit the issues. Pending before the Court is Mr. McCulloch's "Declaration Presenting Evidence Relevant to Propriety of Assignment" ("McCulloch's Declaration")(Docket No. 121).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff McCulloch, a citizen of the State of New York, is the president and sole shareholder of Mandorico, Inc. ("Mandorico") and Tip Top Donuts, Inc. ("Tip Top"). Mandorico and Tip Top are incorporated under the laws of Puerto Rico. Defendants are all citizens of Puerto Rico. On June 20, 1996, Mandorico and Tip Top entered into a lease agreement with the Puerto Rico Industrial Development Corporation ("PRIDCO") for the premises where Mandorico's business is located. On May 7, 1997, Mr. McCulloch, acting as president of Mandorico and Tip Top (collectively, "sellers"), entered into a purchase and sale agreement ("PSA") with defendants ("purchasers"), whereby defendants purchased a business dedicated to the manufacture and sale of baked goods, pastries, and donuts, among other things. (Docket No. 121–2). The sellers also agreed to assign, and the purchasers agreed to assume, the existing PRIDCO lease.

The PSA required the purchasers to make installment payments and granted the sellers the right to retrieve the business and the equipment if the purchasers defaulted and failed to remedy it within a specified cure period. Mr. McCulloch alleges in the complaint that defendants incurred an uncured default sometime around May, 2001.

On September 11, 2001, Mr. McCulloch, as president and sole shareholder of Mandorico, decided that Mandorico should transfer its rights under the PSA and its collection of monies claim against defendants to McCulloch in his individual capacity. On October 23, 2001, Mr. McCulloch filed in this Court a collection of monies suit against defendants, premising federal jurisdiction on 28 U.S.C. § 1332 (diversity jurisdiction). After several procedural events, on February 27, 2003, this Court dismissed the complaint without prejudice, and decided *sua sponte,* that the assignment of rights was an improper attempt to create federal jurisdiction. The Court granted defendants' Motion to Dismiss for lack of subject matter jurisdiction finding that, absent a valid assignment of rights or proof that Mandorico was dissolved, Mandorico became an indispensable party to the action which destroyed diversity jurisdiction.

In due course, Mr. McCulloch appealed our decision. As stated before, the Court of Appeals decided that this Court should have given McCulloch an opportunity to defend the bonafides of the assignment before disregarding it as improper. On remand, this Court ordered Mr. McCulloch to submit relevant evidence that would assist the Court in deciding the issue. (Docket No. 114). Mr. McCulloch embraced this opportunity to file a twenty-four (24) page statement to convince the Court that the September 11, 2001 assignment was not collusive and that he had a legitimate business reason for the transfer of rights.

---

**3.** The Court of Appeals left the factfinding method up to the Court's discretion. We found that McCulloch's statement under penalty of perjury, along with the accompanying replies, were sufficient to decide the jurisdictional issues.

With a fully developed record, the Court is now in the position to consider the dismissal arguments, to wit: 1) whether Mandorico's assignment of rights to McCulloch was improper or collusive under 28 U.S.C. § 1359, 2) whether Mandorico and Tip Top are indispensable parties to this action, and 3) whether McCulloch's claims meet the required jurisdictional amount. Because subject matter jurisdiction is challenged, the Court must employ a Fed. R.Civ.P. 12(b)(1) standard.

## STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. Rule 12(b)(1) a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants. *See e.g., Alicea–Rivera v. SIMED,* 12 F.Supp.2d 243, 245 (D.P.R.1998). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995); *Droz Serrano v. Caribbean Records Inc.,* 270 F.Supp.2d 217 (D.P.R. 2003).

When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as ... depositions and exhibits." *See Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996). When federal jurisdiction is premised on the diversity statute, courts must determine whether complete diversity exists among all plaintiffs and all defendants. *Casas Office Machines v. Mita Copystar America, Inc.,* 42 F.3d 668, 673 (1st Cir.1994).

Motions brought under Rule 12(b)(1) are subject to the same standard of review for Rule 12(b)(6) motions. *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *see Torres Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.P.R.2002). Under Rule 12(b)(6) ·dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000)(*quoting Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1) dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

## DISCUSSION

### A. *Propriety of Assignment*

The issue of the propriety of the transfer of rights is a matter governed by 28 U.S.C. § 1359.[4] Congress enacted § 1359, and its predecessors, "to prevent parties from manufacturing· diversity jurisdiction in order to channel garden-variety litigation from the local courts into a federal forum." *McCulloch,* 364 F.3d at 5 (*citing Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 829–29, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969)); *see also Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 643 (1st Cir. 1995)(§ 1359 prevents parties from bringing a vast quantity of ordinary contract and tort litigation into the federal courts).

Transfers or assignments that have the effect of creating federal jurisdiction raise a red flag and, thus, need to be examined with care. *McCulloch,* 364 F.3d at 6 (*citing Prudential Oil Corp. v. Phillips Petroleum . Co.,* 546 F.2d 469, 474 (2nd Cir.

4. 28 U.S.C. § 1359 states, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the· jurisdiction of such court."

1976)). Courts have held that transfers between affiliated corporations "are presumptively ineffective to create diversity jurisdiction." *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989); *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir.1979); *Airlines Reporting Corp. v. S and N Travel*, 58 F.3d 857, 862 (2d Cir.1995); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991–93 (9th Cir.1994); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976); *Toste Farm*, 70 F.3d at 643–644 (1st Cir.1995). This presumption has been extended to assignments between related parties (e.g., assignment between a parent company and a subsidiary or assignments between corporations and their officers and directors). *Blythe Indus., Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 573 F.Supp. 563, 564 (D.P.R.1983); *Syms v. Castleton Indus., Inc.*, 470 F.2d 1078, 1079 (5th Cir.1972). These types of assignment are considered to be highly suspect and subject to even more exacting scrutiny. *McCulloch*, 364 F.3d at 6. The presumption, however, is rebuttable and, in the context of a business transaction, a party may assert a *legitimate business reason* which justifies the transfer. *See Dweck*, 877 F.2d at 792. In the best of circumstances, rebutting the presumption that attaches to an assignment between related parties is likely to be difficult. *McCulloch*, 364 F.3d at 6.

Thus, in order to survive a dismissal for want of jurisdiction in the present case, McCulloch must show that the September 11, 2001 assignment was valid and not an attempt to create jurisdiction where none existed. The Court must then determine whether there were good faith and legally supportable reasons for Mr. McCulloch to assign Mandorico's legal claims to himself.

### 1. *The proffered legitimate business reason*

In his Declaration, Mr. McCulloch narrated a tall tale of a business relationship that went bust. Mr. Thomas Keeper, the villain of this story, was the lessee of approximately 30 donut stands owned by Mandorico. Mr. Keeper was supposed to pay all the bills for the stands as well as monthly net payments to Mr. McCulloch. Mr. Keeper never made any payments, to anyone. Furthermore, Mr. Keeper allegedly used the Mandorico name to order supplies and materials, and never paid for them. On or about February, 1997, Mr. Keeper fled to Canada. Afterwards, Mr. McCulloch secured a warrant for his arrest for embezzlement and a judgment of more than $619,000. (Docket No. 121 ¶¶ 4–7).

Nevertheless, Mr. McCulloch suffered the consequences of Mr. Keeper's malfeasance. The creditors were swarming him. Suits were filed, and later settled, against him and Mandorico. Consequently, Mr. McCulloch states that he honestly believed, and still believes, that there are companies that will sue Mandorico or place a lien on property or assets owned by Mandorico to recover for obligations incurred by Mr. Keeper. He states that it was not prudent to commence legal action against defendants in Mandorico's name because that would be like establishing a fund for persons who were defrauded by Mr. Keeper. Thus, he argues that the reason for the assignment of rights and the filing of the present suit was to recover money and keep it, not to create diversity jurisdiction. (Docket No. 121 at ¶ 9).

McCulloch further states that Mandorico, although not dissolved, is not an operating company and that its only asset is the lease with PRIDCO. Finally, McCulloch argues that he has not dissolved Mandorico because if he does, it would not be in a position to transfer the lease to defen-

dants, an act which he has always been willing to do if they pay their obligations. (*Id.* at ¶ 11).

■ In sum, Mr. McCulloch's proffered reason for assigning Mandorico's causes of action to himself was not the fabrication of diversity jurisdiction but, essentially, a device to defraud Mandorico's creditors. That is, Mr. McCulloch suggests that because attainment of federal diversity jurisdiction was not the primary reason for the assignment of rights, but only an indirect result, his actions are not under the purview of 28 U.S.C. § 1359 and thus the case must not be dismissed for lack of jurisdiction. The argument is not persuasive.

An assignment of rights cannot create diversity jurisdiction unless there is a *legitimate* business reason which justifies such an assignment. *Blythe Indus., Inc.,* 573 F.Supp. at 564. In other words, federal jurisdiction under section 1332 shall be attained through legitimate means and for good faith purposes. The fact that the assignment was allegedly not primarily done for attaining federal diversity jurisdiction does not end the question, as Mr. McCulloch suggests. Rather, the assignment of rights which Mr. McCulloch argues to have incidentally created diversity of citizenship between the parties, must be legally valid if it is to open the federal courthouse's doors.

Hiding real or potential assets from creditors is hardly a legitimate business reason. As a matter of fact, under Puerto Rico law it is an illegal act which subjects a contract to rescission.[5] Federal courts have considered the substantive legality of the assignment when considering its propriety for purposes of attaining federal diversity jurisdiction. For instance, the Tenth Circuit took this into consideration in *Bradbury v. Dennis,* 310 F.2d 73,76 (10th Cir.1962), where it upheld the validity of an assignment because the Court could not say that it was "either improper or collusive" or that it operated "to the prejudice of any third party, including the creditors of the corporation." More recently, in *Land Holdings Ltd., v. Mega Holdings, Inc.,* 283 F.3d 616, 619 (3rd Cir. 2002), the Third Circuit upheld as legitimate a bank's assignment of a mortgage in favor of a nonresident assignee, who was organized offshore for tax purposes, where such use of offshore corporations was part of a normal and customary practice of the assignee's principals. In so deciding, the Court emphasized that "the legitimacy of the transfer or assignment of a mortgage is a far more important factor in determining whether jurisdiction was collusively manufactured than is the motive of the parties for the assignment." *Id.*

In the present case, Mr. McCulloch fails to provide this Court with a *legitimate* business reason justifying his assigning Mandorico's rights to himself. Absent such a legitimate business reason, the presumption that the assignment was ineffective to confer federal jurisdiction must stand. Federal diversity jurisdiction is conferred when all indispensable parties to a controversy are of diverse citizenship and have a claim of $75,000.00 or more. When such jurisdictional requirements are achieved through insidious means, 28 U.S.C. § 1359 operates to close the federal courts to suitors. To assume jurisdiction under the present circumstances would turn this Court into an instrument of fraud.

---

5. 31 L.P.R.A. § 3492–Contracts subject to rescission.

The following may be rescinded:

. . .

(3) Those executed in fraud of creditors, when the latter cannot recover, in any other manner, what is due them.

. . . .

Since the assignment was improper, Mr. McCulloch is not legally empowered to represent Mandorico's claims.[6] However, because the joinder of Mandorico and Tip Top would destroy diversity jurisdiction, the Court must now determine whether such corporations are indispensable parties to this case.

## B. *Indispensable Parties*

It is well-settled that a corporation is a separate and independent entity from its shareholders, even when it has only one shareholder. Hence, the Court must treat Mandorico, Tip Top, and Mr. McCulloch as three separate and independent persons in making this determination. *See e.g., In re Plantation Realty Trust,* 232 B.R. 279, 282 (Bkrtcy.D.Mass.1999); *Green v. Victor Talking Mach. Co.,* 24 F.2d 378, 380 (2nd Cir.1928) ("Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons.")

Rule 19(a) of the Federal Rules of Civil Procedure dictates that if a person is amenable to service of process and his joinder would not deprive the court of subject matter jurisdiction, that person shall be joined as a party in the action if: 1) in the person's absence complete relief cannot be accorded among those already parties; or 2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may impair or impede the person's ability to protect that interest, or leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a)(1) and (2)(i)(ii).

A look at the record reveals that the PSA names Mr. McCulloch, Mandorico and Tip Top as the "sellers." Hence, unless Mr. McCulloch is seeking redress for injuries he personally suffered as a result of defendants' alleged breach, all signatories to the PSA must appear as plaintiffs in order for the Court to provide proper relief. *Acton Co. Of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982); *Ferrer v. Carricarte,* 751 F.Supp. 1032, 1034 (D.P.R.1990).[7] Since Mandorico and Tip Top cannot be joined without destroying diversity, and therefore stripping the Court of subject matter jurisdiction, the Court must then look at Rule 19(b), which provides that "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." Fed.R.Civ.P. 19(b). In making this determination, the Court must consider: 1) the extent to

---

**6.** Defendants pointed to additional legal defects in Mandorico's assignment of rights to Mr. McCulloch, namely, that it does not comply with Puerto Rico's corporate laws (Docket No. 138). Defendants argue that, pursuant to 14 L.P.R.A. § 3001, any transfer of assets, property, or lease must include a corporate resolution signed by the corporation's secretary, which is lacking in the signed assignment produced by Mr. McCulloch (Docket No. 137), a failure that defendants claim raises questions about the validity of the transaction.

**7.** The general rule in this jurisdiction is that a stockholder of a corporation has no personal or individual right of action against a third person for damages that result indirectly to the stockholder because of an injury to the corporation. *In re Dein Host, Inc.,* 835 F.2d 402, 405–06 (1st Cir.1987). A shareholder is entitled to sue only where there is a direct injury to the share-holder in his or her individual capacity, independent of any duty owed the corporation. *Continental Illinois National Bank & Trust Co. v. Stanley,* 585 F.Supp. 1385, 1388 (N.D.Ill.1984).

which a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; 3)whether judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *Id.*

■ Whether a person is "indispensable" can only be determined in the context of particular litigation. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Soberay Machine & Equipment Co. v. MRF Limited, Inc.,* 181 F.3d 759, 765 (6th Cir.1999). To say that a court must dismiss in the absence of an indispensable party and that it cannot proceed without him or her puts the matter the wrong way around: a court does not know whether a particular person is indispensable until it has examined the situation to determine whether it can proceed without him or her. *Provident Tradesmens Bank,* 390 U.S. at 119, 88 S.Ct. 733. If the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach, ought not to prevent a decree upon its merits. *Id.,* at 121, 88 S.Ct. 733.

Therefore, in this case Mr. McCulloch must show that he personally suffered the damages he alleges in each of the claims, to wit: 1)$50,000 for back rent owed to PRIDCO; 2) $50,000 for the value of equipment which defendants were required to return to plaintiffs in the event of default, but that plaintiffs claim was stolen from the premises; 3) $43,705 for contractual payments owed by defendants; and 4) $100,000 in damages. Also, he must

establish that Mandorico and Tip Top's interests are not going to be harmed by not being a party in the present case, and that Mandorico and Tip Tip are not otherwise required to appear in the present case in order for the Court to properly adjudicate the controversy.

■ After carefully evaluating the record, the Court finds that Mr. McCulloch has not shown that he personally suffered sufficient damages to independently maintain this suit in federal court, or that Mandorico and Tip Top's joinder is not required in accordance with the above mentioned criteria. Mandorico and Tip Top, therefore, remain indispensable parties to the present controversy.

As to the first claim, the back rent owed to PRIDCO, the Court finds that Mr. McCulloch is not personally entitled to collect. The PSA clearly shows that PRIDCO and Mandorico are the only signatories to the lease. (Docket No. 121–2). Hence, Mandorico, as the party directly responsible for the lease payments, could file suit to force defendants to comply and pay what they owe, not McCulloch. To this, Mr. McCulloch's counters in his Declaration that inasmuch he is Mandorico's assignee, he has "the rights that Mandorico has, and I can enforce them" (Docket No. 121 ¶ 52). However, the Court having decided in the preceding section that the assignment was inappropriate, this argument simply fails.

Regarding the second claim, the money owed for the lost equipment, the Court also finds that Mr. McCulloch is not personally entitled to collect. After carefully examining Mr. McCulloch's Declaration, the Court is not in a position to determine which of the three sellers the assets belonged to or who is entitled to collect. McCulloch's Declaration just discusses the alleged current value of the equipment in order to persuade the Court that his claim

meets the $75,000 diversity jurisdiction threshold, but fails to assert and prove who holds title to such property. (Docket No. 121 ¶¶ 21–38). Thus, a judgment in favor of Mr. McCulloch could prejudice the interests of Mandorico and Tip Top in their absence.[8]

As to the third claim, the contractual payments owed, the Court is also in no position to determine whether Mr. McCulloch is personally entitled to collect. Specifically, the PSA states that the defendants were to make their payments to Mr. McCulloch, but it does not specify whether he would receive these payments in his personal capacity or on behalf of Mandorico or Tip Top. Mr. McCulloch's Declaration does not shed light over this matter either. He just asserts that the purchasers knew they were paying him in his personal capacity, not as president of Mandorico or Tip Top (Docket No. 121 ¶ 21), notwithstanding the fact that the BPA names Mandorico and Tip Top as the sellers, and Mr. McCulloch appeared in that transaction as President and Chief Executive Officer of each corporation.

Finally, regarding the damages claim, the Court reiterates that Mr. McCulloch has failed to identify the amount of damages suffered by each of the signatories to the PSA. Without such details, the Court is not in a position to determine what part of the damages sought, if any, Mr. McCulloch is personally entitled to.

Therefore, the Court concludes that Mandorico and Tip Top are indispensable parties to this action. It has been clearly established that Mandorico and Tip Top's interests could be seriously harmed by them not being parties in the present case.

It is also clear that those interests are so pervasive that the Court cannot render an adequate judgment for all parties without their joinder in this action. Mandorico and Tip Top are not mere nominal parties to this controversy; they are the actual signatories to the contract that gave rise to this case. Moreover, the Court is not aware, nor it has been made aware of, any obstacle for the interested parties to pursue their claims in state court.

Since Mandorico and Tip Top's joinder would destroy diversity jurisdiction, the Court hereby **DISMISSES** the case. Judgment shall enter accordingly.

IT IS SO ORDERED.

---

8. At this juncture, the Court must point out that, even assuming, *arguendo,* that the assignment to Mandorico was valid, the transfer would still be insufficient since Mr. McCulloch did not assign Tip Top's rights to himself. (Docket No. 137). Hence, Tip Top's presence would still be required and diversity would disappear notwithstanding the assignment to Mandorico. The same analysis applies to the remaining claims.